**In re Donald E. ARMSTRONG, Debtor.**

**Donald E. Armstrong, Appellant,**

v.

**Kenneth A. Rushton, Trustee, and Steppes Apartments, Ltd., Appellees.**

**BAP No. UT–02–007. Bankruptcy No. 00B–26592.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 24, 2003.

---

Donald E. Armstrong, pro se.

Lon A. Jenkins (Penrod W. Keith with him on the brief), of LeBoeuf, Lamb, Greene & MacRae, L.L.P., Salt Lake City, UT, for Kenneth A. Rushton.

Jeffrey L. Shields (Zachary T. Shields with him on the brief), of Callister, Nebeker & McCullough, Salt Lake City, UT, for Steppes Apartments, Ltd.

Before McFEELEY, Chief Judge, BOHANON, and CORDOVA [1], Bankruptcy Judges.

## ORDER DENYING MOTION

MCFEELEY, Chief Judge.

The matter before the Court is the Motion for Reconsideration of the Court's May 9, 2003 Opinion ("Motion"), filed May 19, 2003, by the Appellant. The Motion is opposed by both Appellees. The Appellant has filed replies to the Appellees' responses. The Court has reviewed the pleadings and applicable case law and determines that the Motion should be denied.

Neither Federal Rule of Bankruptcy Procedure 8015 nor Rule 8015–1 of this Court's Local Rules states the substantive requirements for motions for reconsideration. However, when those Federal and Local Rules are silent, Local Rule 8018–11(b) provides that we may order application of the Federal Rules of Appellate Procedure or the Tenth Circuit Rules. Federal Rule of Appellate Procedure 40(a)(2) declares that a petition for rehearing before one of the United States Courts of Appeals "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Tenth Circuit Rule 40.1(A) adds that: "A petition for rehearing should not be filed routinely. Rehearing will be granted only if a significant issue has been overlooked or misconstrued by the court."

---

1. The Honorable Donald E. Cordova, Chief Bankruptcy Judge for the District of Colorado, heard oral argument in this appeal but passed away February 16, 2003. Prior to his death, he had considered this matter fully and participated in the panel's conference and resulting decision.

We believe that the standards set by these rules should apply to the Motion.

The Appellant argues that the Court's Opinion erred when it referred to the Utah Default Ruling as a Utah state court decision and that the *Rooker-Feldman* doctrine prevents his liability. The Appellant is correct that the Utah Default Ruling is a federal court decision. However, this does not change the reasoning in the Opinion. Because the Utah Default Ruling did not modify the Texas Modified Judgment, the *Rooker-Feldman* doctrine does not void the Utah Default Ruling. Applying federal, rather than state, collateral estoppel principles does not change the result that the Utah Default Ruling precludes the Appellant from disputing that he is liable to Steppes as provided in the complaint filed in Utah district court. The Appellant was a party to the Utah Default Ruling. The Appellant argues that the Utah Default Ruling was an oral ruling, but as discussed in the Opinion, the fact that the Appellant's bankruptcy filing prevented the Utah district court from entering a written order memorializing the Utah Default Ruling does not prevent it from being considered a final judgment.

The Court will revise the opinion to clarify that the Utah Default Ruling was a federal court decision. In all other respects, the Motion will be denied. No significant issue has been overlooked or misconstrued by the Court.

Accordingly, it is HEREBY ORDERED that:

1. The Opinion entered May 9, 2003, is WITHDRAWN, and the following Opinion is substituted in its place.
2. The Motion is DENIED.
3. The Court's mandate will issue immediately.

OPINION

Donald E. Armstrong ("Armstrong") appeals an Order of the United States Bankruptcy Court for the District of Utah that temporarily allowed a claim by Appellee Steppes Apartments Ltd., for voting purposes in Armstrong's Chapter 11 Plan. Armstrong argues that the Temporary Allowance Order erred in calculating the disputed claim, violated his constitutional rights, and was invalid because of bias. We affirm.

## I. *Background*

Donald E. Armstrong created two trusts in which he was the beneficiary and trustee: the Donald E. Armstrong Family Trust ("Family Trust"), created in 1983, and the Donald E. Armstrong Charitable Remainder Unitrust ("Unitrust"), created in 1994 (hereinafter, when referred to jointly, "the Trusts"). In the mid–1990s, a real estate transaction took place between Steppes Apartments, Ltd. ("Steppes") and the Trusts in which Steppes partially financed the purchase of an apartment building from the Trusts with two promissory Notes ("Notes"), one payable to the Family Trust and one to the Unitrust. After the Trusts accelerated payment on the Notes and imposed a high default interest rate, a series of lawsuits occurred in Texas state courts. In 1997, Steppes obtained a judgment solely against the Trusts. The judgment included certain penalties under Texas usury statutes and a forfeiture of the underlying Notes issued by Steppes to the Trusts ("Texas Modified Judgment"). The Trusts appealed the Texas Modified Judgment through the Texas appeal courts and lost at every appellate level, concluding in June 23, 2002, with a denial of certiorari by the United States Supreme Court.[2]

2. The total amount owed to Steppes and its principal John Feece under the Texas Modi-

After the entry of the Texas Modified Judgment, Armstrong caused the Family Trust to transfer its assets to him personally.[3] This transfer precipitated a series of lawsuits in the Utah courts. In the Utah federal courts, Steppes proceeded against the Family Trust and against Armstrong individually, initially alleging only fraudulent transfer of property. During the course of the litigation, Steppes amended its original complaint to assert additional claims against Armstrong based on theories of alter ego, civil conspiracy, constructive trust, and unjust enrichment. After Steppes filed the Amended Complaint, Mountain Pacific Ventures ("MPV") was added as a defendant. Armstrong was the president, director, treasurer, and registered agent of MPV. The Family Trust was the sole shareholder of MPV. MPV filed a notice of a Chapter 11 bankruptcy petition on March 10, 1999, and soon after was dismissed from the litigation with prejudice. Ultimately, by minute entry dated March 1, 2000, the Utah federal court ruled that it would enter a default judgment against Armstrong as a result of Armstrong's failure to comply with court orders related to discovery ("Utah Default Ruling"). The Utah Default Ruling determined Armstrong's liability to Steppes, but reserved the issue of Steppes's remedy for a later hearing.

Before the Utah Default Ruling against Armstrong was memorialized as a written order, Armstrong filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of California on March 10, 2000.

Because that court found that venue was not proper in California, Armstrong's case was transferred to the Utah bankruptcy court. Creditors moved to remove Armstrong as debtor-in-possession, for, among other things, impropriety in the administration of the estate. In September 2000, Appellee Kenneth A. Rushton ("Rushton"), was appointed Chapter 11 trustee for Armstrong's estate.

On September 8, 2000, Steppes filed Claim 27 ("Claim 27") for an undetermined amount in the Chapter 11 case. Claim 27 set forth the following three grounds in support of Steppes's claim against the estate: (1) claims based on the Utah Default Ruling for fraudulent transfer, conspiracy, alter ego, constructive trust, unjust enrichment; (2) claims based on Steppes's Nondischargeability Complaint filed in Armstrong's Chapter 11 case for malicious prosecution, abuse of process, or wrongful use of civil proceedings; and (3) a claim to the extent that the bankruptcy estate is the successor in interest to the Trusts under the Modified Agreement. Armstrong filed an objection to Claim 27. Initially, Rushton joined in the objection.

In June 2001, Rushton entered into a settlement with Steppes ("Steppes Settlement") and Roger G. Segal, Trustee in bankruptcy of MPV. The Steppes Settlement provided that in exchange for Steppes's claims against Armstrong, Steppes would be allowed a secured claim of $120,795 and a contingent unsecured claim of $1,398,979 in Armstrong's Chapter 11 case.[4] After entering into the Steppes Settlement, Rushton moved to stay his

---

fied Judgment including fees and interest to the date of Armstrong's bankruptcy filing is $1,579,283.90. Of that amount, $1,005,713.08 is owed pursuant to the award against the Family Trust, and $573,570.06 is owed pursuant to the award against the Unitrust.

3. In May 1997, in accordance with the Utah Foreign Judgment Act, Utah Code Ann. 78–22a–1 (1953) *et seq.*, the Texas Modified Judgment was filed in Utah.

4. With respect to the contingent unsecured claim, the Steppes Settlement provides that if Rushton cannot take control of the Texas liti-

objection to Claim 27. Armstrong objected to the Steppes Settlement. The objections to Claim 27 were converted to an adversary proceeding.

Steppes filed a Motion for Temporary Allowance of Claim and Supporting Memorandum ("Motion"). The Motion sought to have Steppes's claims temporarily allowed for voting purposes on the Trustee's Plan. In its Motion, Steppes asserted claims based on the following: fraudulent transfer, alter ego, default judgment, abusive litigation, judgment liens.[5] Armstrong objected to the Motion.

The bankruptcy court held an evidentiary hearing on the Motion. The hearing took five days. During the hearing, at which Armstrong was present, several witnesses testified and numerous documents were introduced as evidence. Subsequently, the bankruptcy court entered an Order temporarily allowing for voting purposes Steppes's claims only as delineated in the Steppes Settlement ("Temporary Allowance Order"). The bankruptcy court found that with respect to Steppes's claims of abuse of process and wrongful use of civil proceedings, although Steppes had presented the court with compelling evidence to substantiate those claims, Steppes had not presented the court with sufficient information to enable the bankruptcy court

to estimate them; therefore, these claims were allowed at zero.

Rushton filed a Trustee's Second Revised Plan of Reorganization Dated November 19, 2001 ("Trustee's Plan"). The Trustee's Plan was circulated to creditors for voting along with a disclosure statement approved by the court pursuant to § 1125(a). Steppes's estimated unsecured claim of $1,398,979 was classified as Class 4 of the Trustee's Plan and based on a ballot previously filed by Steppes, was counted as a vote in favor of confirmation of the Trustee's Plan. Steppes's secured claim of $120,795 was counted as a vote in favor of the Trustee's Plan in Class 2A. The confirmation hearings began on December 20, 2001. One of the issues during the confirmation hearings was approval of the Steppes Settlement.

On January 31, 2002, the bankruptcy court entered Findings of Fact, Conclusions of Law and Order Confirming and Approving Trustee's Second Revised Plan of Reorganization Dated November 19, 2001 and Granting Related Motion on January 31, 2002 ("Confirmation Order"). In the Confirmation Order, the bankruptcy court found that Class 4 had accepted the Trustee's Plan[6] and that, alternatively, the Trustee's Plan could be confirmed over the dissent of Class 4 because the Trustee's

---

gation, Steppes shall be allowed a compromise unsecured claim of $1,398,979.

**5.** In its Motion, Steppes asserted that its various claims were secured in the following amounts: (1) the fraudulent transfer claim in the amount of $1.1 million; (2) the alter ego claim in the amount of $1.8 million; (3) the default judgment claim in the amount of $1.1 million; (4) the judgment lien claim in the amount of the value of the American Flag property subject to senior liens and limited by the amount of the Texas Modified Judgment against the Family Trust of approximately $1.1 million. Steppes further asserted that its abusive litigation claim was unsecured in an

amount somewhere between one and two million.

**6.** Class 4 was comprised of unsecured claims totaling approximately $1,694,034.09. In a Trustee Voting Rights Motion ("Voting Motion"), a creditor, Steven R. Bailey, Chapter 7 Trustee for Willow Brook Cottages, LLC ("Bailey") asked the bankruptcy court to determine who could vote certain disputed claims. The Voting Motion was heard and the bankruptcy court made findings of fact and conclusions of law on the record on January 15, 2002, concluding that Bailey held 70% of the disputed claims and Armstrong held 30% of the disputed claims. Later, Armstrong purported to vote the full amount of

Plan satisfied the "cram down" provisions in § 1129(b) with respect to Class 4. The bankruptcy judge further found that Class 2A had accepted the Trustee's Plan as had Class 2C, which was the impaired claim of Zion's Bank. In the Confirmation Order, the bankruptcy judge also approved the Steppes Settlement.

Armstrong appealed the Confirmation Order to this Court. He also filed a motion asking the bankruptcy court to enlarge the time for filing a notice of appeal of the Confirmation Order. The bankruptcy court denied that motion, and he appealed. Both appeals were dismissed by panels of this Court, *see* BAP Nos. UT–02–011, UT–02–038, and have been further appealed to the Tenth Circuit.

Armstrong timely appealed the Temporary Allowance Order.

## II. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R. Bankr.P. 8013. *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

A factual finding is "clearly erroneous" when " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' " *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *Le-Maire v. United States,* 826 F.2d 949, 953 (10th Cir.1987)). In reviewing findings of fact, we are compelled to give due regard

each of the disputed Class 4 Claims as rejecting claims while Bailey voted whatever portion of the disputed Class 4 Claims he held. In voting the Disputed Class 4 Claims, Bailey asserted his right as the majority owner of the claims to vote the full amount as accepting the Trustee's Plan. In the Confirmation Order, the bankruptcy court found as follows:

> Whether the Trustee votes the full amount of the Disputed Class 4 Claims or 70% of them, or whether each of these claims is treated as two claims for voting purposes to be voted by the Trustee and the Debtor, Class 4 has voted to accept the Plan because creditors who hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by such creditors have voted to accept the Plan. 11 U.S.C. § 1126(c).

Confirmation Order at 6, *in* Rushton's App. at 196. In a footnote, the bankruptcy court further explained:

> If the Trustee is permitted to vote the full amount of the Disputed Class 4 Claims, then 8 Claims voting in that Class voted to accept the Plan and 4 voted to reject, with claims totaling $1,604,25[9].22 voting to accept and $89,774.87 voting to reject the Plan. If the Trustee is permitted to vote 70% of each Disputed Class 4 Claim and the Debtor 30% (with the Disputed Class 4 Claims) being split for purposes both of number of claims voting and for amounts voted, then the voting in Class 4 is 7.1 votes to accept the Plan and 4.9 votes to reject the Plan, with claim amounts totalling [sic] $1,569,024.76 in favor of the Plan and $125,009.33 against the Plan. If each of the Disputed Class 4 Claims is split so that each would be counted as two votes in Class 4, but the Trustee would vote 70% of each Disputed Class 4 Claim and the Debtor 30% of each Disputed Class 4 Claim, the result would be 8 votes to accept the Plan, 4 votes to reject the Plan, with claims totaling $1,569,024.76 in favor of the Plan and $125,009.33 against the Plan. In each of these three alternative scenarios, the requirements of Section 1126(d) for acceptance of the Plan are met with respect to Class 4.

*Id.* at 6–7 n. 3, *in* Rushton's App. at 196–97.

to the opportunity of the bankruptcy court to judge the credibility of witnesses. Fed. R. Bankr.P. 8013.

■ Armstrong claims, without legal support, that he is entitled to de novo review on the merits. However, a judge's decision to temporarily allow a claim under Federal Rule of Bankruptcy Procedure 3018(a) is reviewed for abuse of discretion. *See generally In re Marin Town Ctr.,* 142 B.R. 374, 379 (N.D.Cal.1992). "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991) (further quotation omitted)). As with the clearly erroneous standard, when applying the abuse of discretion standard, deference is given to the bankruptcy court "'because of its first-hand ability to view the witness or evidence and assess credibility and probative value.'" *Id.* (quoting *McEwen,* 926 F.2d at 1553–54).

### III. *Discussion*

As a preliminary matter, we must consider our jurisdiction over this appeal. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Procedurally, we have jurisdiction. The bankruptcy court's order is a final order subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Armstrong timely filed his notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. All parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Utah. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001. However, both Armstrong and Rushton question this court's subject matter jurisdiction.

■ Armstrong asks that this Panel recuse itself from deciding the merits of the appeal on the grounds that we are biased and cannot effectively review other bankruptcy judges who are our peers. He has offered no legal or factual basis for this contention. We conclude that there is no merit in this request and deny it. *See Bryce v. Episcopal Church in Diocese of Colo.,* 289 F.3d 648, 659–60 (10th Cir.2002) (finding "[t]he recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice.").

Rushton argues that we do not have jurisdiction over this appeal for the following two reasons: (1) the appeal is an improper attempt to appeal an ancillary order; (2) the appeal is moot.

■ First, Rushton argues that this appeal is not properly before us because it is really a collateral attack on the Confirmation Order. To support this argument, Rushton indicates that the bankruptcy court approved the Steppes Settlement in the Confirmation Order. Therefore, Rushton concludes, the terms of the Temporary Allowance Order were incorporated into the Confirmation Order and cannot be changed in the absence of an appeal of the Confirmation Order. This argument fails.

A reference to a previous order cannot turn two separate orders into one. While Rushton may be correct in asserting that one of the reasons for this appeal is to overturn the Confirmation Order, the purpose behind an appeal cannot alone defeat it. The Temporary Allowance Order was a separate order from the Confirmation Or-

der. Armstrong timely appealed it. We have the jurisdiction to consider it.

■■■ Second, Rushton argues that this appeal is not properly before us because it is moot. The Constitution authorizes federal courts to hear only "cases" or "controversies." *See* U.S. Const., Art. III § 2, cl. 1. If there is no live case or controversy as mandated by the constitution then an appeal will be moot. *See Out of Line Sports, Inc. v. Rollerblade, Inc.*, 213 F.3d 500, 501 (10th Cir.2000). A controversy is no longer "live" if the reviewing court cannot render "any effectual relief whatever." *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)); *see also Egbert Dev. LLC v Community First Nat'l Bank (In re Egbert Dev.)*, 219 B.R. 903 (10th Cir. BAP 1998). A party must seek only that relief that is " 'capable of addressing the alleged harm.' " *Nat'l Advertising Co. v. City and County of Denver*, 912 F.2d 405, 411 (10th Cir.1990) (quoting *Blinder, Robinson & Co. v. United States Sec. & Exch. Comm'n*, 748 F.2d 1415, 1418 (10th Cir.1984)).

■■■ The appeal here focuses on a Temporary Allowance Order entered in accordance with the provisions of Federal Rules of Bankruptcy Procedure 3018(a). Pursuant to Rule 3018(a), a bankruptcy judge after notice and a hearing "may temporarily allow the claim or interest [of a creditor] in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr.P. 3018(a). A creditor may request the temporary allowance of a claim under one of the following nonexclusive circumstances: when an objection to the claim has been filed and "the objection was filed too late to be heard prior to the confirmation hearing, when fully hearing the objection would delay administration of the case, or when

the objection is frivolous or of questionable merit." *See* 9 *Collier on Bankruptcy* ¶ 3018.01[5] (Lawrence P. King ed., 15th ed.2003) (footnotes omitted); *In re Zolner*, 173 B.R. 629, 633 (Bankr.N.D.Ill.1994), *aff'd*, 249 B.R. 287 (N.D.Ill.2000). The policy behind temporarily allowing claims is to prevent possible abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections to the claims of dissenting creditors. *Stone Hedge Properties v. Phoenix Capital Corp. (In re Stone Hedge Properties)*, 191 B.R. 59, 64 (Bankr.M.D.Pa.1995); *see also* 9 *Collier on Bankruptcy* ¶ 3018.01[5]. Temporary allowance of a claim under Rule 3018(a) is not dispositive as the amount of the claim; it provides only limited voting authority to a creditor.

■■■ There is no guidance in the Bankruptcy Code to courts as to how to determine whether to permit the temporary allowance of a claim; it is left to a court's discretion. *See Marin*, 142 B.R. at 379; 9 *Collier* ¶ 3018.01[5]. The Bankruptcy Code also offers no guidance on which party has the burden of proof in a Rule 3018(a) estimation proceeding. Some courts have placed the burden of proof on the claimant while other courts have placed it on the objector. *See, e.g., Zolner*, 173 B.R. at 633–36 (burden of proof is on the claimant); *Stone Hedge*, 191 B.R. at 64–65 (questioning whether burden of proof in a summary proceeding should be on the objector). Because a temporary allowance order only arises if there is an objection to a claim, we conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation.

■■■ The Temporary Allowance Order permitted Steppes's claim for the limited purpose of voting on the Trustee's Plan.

The Trustee's Plan was approved by the creditors, and ultimately, the court entered a Confirmation Order. The resulting Confirmation Order allowed Steppes's claim as contemplated by the Settlement Agreement. The Confirmation Order was not timely appealed. Because the Settlement Agreement was approved in the Confirmation Order and by its terms the Settlement Agreement is identical to the Temporary Allowance Order, there is no relief we can offer in the absence of a timely appeal of the Confirmation Order.

Armstrong argues that this appeal is not moot because if there was no basis for temporarily allowing the claim, then the voting on the Trustee's Plan was tainted. That argument is not persuasive. First, even if there was no basis for temporarily allowing Steppes's Claim, the Steppes Settlement, which is identical in terms to the claim permitted in the Steppes's Temporary Allowance Order, was allowed in the Confirmation Order, and that order has not been timely appealed. Second,[7] we observe that even if we were to find that Class 4 was a nonaccepting class, under 11 U.S.C. § 1129(b),[8] a plan may be confirmed if the plan is affirmatively accepted by at least one impaired class under § 1129(a)(10).[9] Here, the impaired Zions

Bank in Class 2C affirmatively accepted the Trustee's Plan. On that basis, the Trustee's Plan could have been confirmed. Third, in the Confirmation Order the bankruptcy court found that the Trustee's Plan would have been approved even over the dissent of Class 4 under the provisions of § 1129(b). *See In re Miami Trucolor Offset Service Co.*, 187 B.R. 767, 769 (Bankr.S.D.Fla.1995) (finding that court was justified in refusing to temporarily allow claim for voting purposes because negative vote by creditor, even if counted, would not have prevented confirmation of the plan).

Section 1129(b) delineates what has been called the "cram down" provisions of the bankruptcy code. These provisions are so named because they provide that a plan may be confirmed over the dissent of a class if the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). With respect to a class of unsecured claims, the statute further provides that the plan must offer each holder of such a claim property equivalent to the allowed amount of the claim as of the effective date of the plan or provide that any holder of a junior interest

---

**7.** Although there are no provisions in the Bankruptcy Code that directly provide for what would be the nullification of Steppes's Vote after the Confirmation Order was entered, Federal Rule of Bankruptcy Procedure 3006 provides that a creditor may withdraw a claim after notice and hearing. Thereafter, under Rule 3006, an "authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan." Fed. R. Bankr.P. 3006. So by analogy, on points two and three, we are proceeding under the assumption that if the Temporary Allowance Order had not been entered or were invalid, Steppes's unsecured claim in Class 4 would have been withdrawn, and without Steppes's Secured Claim there would have been no Class 2A.

**8.** All future statutory references are to Title 11 of the Bankruptcy Code unless otherwise noted.

**9.** In pertinent part that statute provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10).

or claim will not receive or retain any property. 11 U.S.C. § 1129(b)(2)(B)(i), (ii). In this case, the bankruptcy court found that the Trustee's Plan was fair, equitable, did not discriminate, and there were no junior lienholders. The bankruptcy court concluded that under § 1129(b), the Trustee's Plan would have been confirmed even had Class 4 rejected the Trustee's Plan.

Armstrong argues that the Trustee's Plan did not meet the provisions of § 1129(b) because it falsely promised to pay all of the unsecured creditors' debt. He bases this argument on his allegations that a number of "unknown" administrative claims were presented following confirmation of the Trustee's Plan. Because under the provisions of the Bankruptcy Code these administrative claims must be paid first and therefore will deplete the funds available to pay the unsecured creditors, Armstrong concludes that the Trustee's Plan was confirmed erroneously. That argument has no merit.

Section 1129(b) does not require full payment to unsecured creditors before a plan may be approved pursuant to its pro-visions.[10] Most important, the number of administrative claims presented following a plan confirmation has no bearing on whether the provisions of § 1129(b) were accurately administered or whether a temporary allowance order was correctly entered. Any false allegations regarding the amount of money with which to fund a plan go to the validity of the Confirmation Order and not to the validity of the Temporary Allowance Order.[11] Finally, even were we were to find the voting tainted, in the absence of a timely appeal of the Confirmation Order, there is no relief we could fashion that could address the alleged harm.[12]

▇▇▇▇ Armstrong's next arguments cluster around the validity of the Temporary Allowance Order. First, he argues that this appeal is not moot, because under the *Rooker-Feldman* doctrine the bankruptcy court never had the jurisdiction to enter any orders relating to the Texas Modified Judgment, and therefore, this Court should reverse the Temporary Allowance Order and by extension, the Con-

---

**10.** Section 1129(b) contemplates the treatment of impaired classes. By definition, an impaired class is one whose rights are altered under the plan. In pertinent part, § 1124 provides:

Except as provided in section 1123(a)(4) of this title, a class of claims or interest is impaired under a plan unless, with respect to each claim or interests of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitled the holder of such claim or interest....

11 U.S.C. § 1124(1).

**11.** Armstrong further argues that Steppes filed liens in bad faith and therefore should be precluded from the equitable relief awarded in the Confirmation Order. Because the Confirmation Order was not timely appealed, we do not have the jurisdiction to consider that argument.

**12.** It is possible that even had an appeal of the Confirmation Order been timely, that appeal would have been determined to be moot. A mootness analysis in the bankruptcy context is different with respect to a Confirmation Order than a constitutional analysis. *van Hart v. Berryman Products, Inc. (In re Berryman Products, Inc.)*, 159 F.3d 941, 944 (5th Cir.1998). An appellate court "may decline to consider the merits of confirmation when a plan has been so substantially consummated that effective judicial relief is no longer available—even though the parties may have a viable dispute on appeal." *Id.* Under *Berryman*, there is a three-part test when considering a dismissal of a challenge to reorganization plans: 1) whether a stay has been obtained; 2) whether the plan has been substantially consummated; 3) whether the relief requested would affect either the rights of parties not before the courts or the success of the plan. *Id.*

firmation Order. The *Rooker-Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). When determining whether the *Rooker-Feldman* doctrine applies, " '[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.' " *State of Missouri ex rel. Nixon v. Audley (In re Audley)*, 275 B.R. 383, 390 (10th Cir. BAP 2002) (quoting *Collins v. Kansas*, 174 F.Supp.2d 1195, 1198 (D.Kan.2001) (further quotation omitted)).

Armstrong's argument is premised on his theory that in entering the Temporary Allowance Order, the bankruptcy court found him personally liable for the Texas Modified Judgment whereas the Texas Modified Judgment imposed liability only on the Trusts. Armstrong concludes that the bankruptcy court altered the Texas Modified Judgment and violated the *Rooker-Feldman* doctrine.[13] This syllogism is based on a misunderstanding of the *Rooker-Feldman* doctrine and what occurred in the proceedings below.

Clearly, the *Rooker-Feldman* doctrine prohibits federal courts from reviewing or changing a state court judgment. As Armstrong correctly states, under the terms of the Texas Modified Judgment, only the Trusts were liable for Steppes's Claims. However, the Steppes Claim permitted in the Temporary Allowance Order was not based on the Texas Modified Judgment, it was based on the Utah Default Ruling, a judgment against Armstrong in his personal capacity.

 The bankruptcy court found, when considering Steppes's Claim, that under the collateral estoppel doctrine, it was precluded from revisiting the issues litigated in the Utah Default Ruling. Collateral estoppel, or issue preclusion, is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been "determined by a valid and final judgment." *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997). Although the preclusive effect given to federal court judgments is a question of federal law, the Supreme Court has stated that when a federal court reviews the preclusive effect of a federal diversity judgment, the better federal rule is for the federal court to adopt "the law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). In *Matosantos Commercial Corp. v. Applebee's International, Inc.*, 245 F.3d 1203 (10th Cir.2001), the Tenth Circuit observed that while *Semtek* was a res judicata case, its reasoning arguably applies to collateral estoppel cases as well. *Matosantos*, 245 F.3d at 1208 (declining to decide whether federal or Puerto Rican collateral estoppel requirements applied to Matosantos's claim because the end result would be the same regardless of which collateral estoppel law was applied).

 Utah collateral estoppel requirements are " 'substantially the same as un-

---

**13.** Armstrong argues that the Texas Modified Judgment was unconstitutional because it assessed excessive penalties and violated federal law. These constitutional claims are inextricably intertwined with the state court judgment and in essence, Armstrong asks this Court for appellate review of a Texas court judgment. This is precisely what the *Rooker-Feldman* doctrine prohibits.

der federal law.'" *Frandsen v. Westing-house Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (quoting *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 n. 5 (10th Cir.1992)). In Utah, collateral estoppel will bar the litigation of a claim when the following four elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party [to] or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* In this Circuit, default judgments also have preclusive effect. *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 477 (10th Cir. BAP 1999) (finding "a default judgment entered against a defendant for abuse of the discovery process has preclusive effect in subsequent litigation."); *accord Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3d Cir.1997); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir.1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir.1996); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir.1995).

The bankruptcy court carefully went through each element of the Utah collateral estoppel doctrine and determined that the Utah Default Ruling prohibited the bankruptcy court from reconsidering any issues about liability that had already been raised in the Utah federal court.

Armstrong argues that element number three and element number four of the collateral estoppel doctrine were not met as he personally was never a party to the Texas Modified Judgment and he never

had a full and fair opportunity to litigate any of the issues in the Texas Modified Judgment. However, Armstrong is confusing which ruling was at issue in the bankruptcy court. It was the Utah Default Ruling and not the Texas Modified Judgment that collaterally estopped the bankruptcy court from reconsidering the issue of whether Armstrong was personally liable to Steppes. Undeniably, Armstrong was a party in the Utah proceedings.

Alternatively, Armstrong argues that the Utah Default Ruling is not final because there was no written ruling entered and therefore, it is not entitled to preclusive effect. Case law provides otherwise. As cited by the bankruptcy court in its ruling, the law provides that a ruling of a court, even when the ruling is a default judgment, is sufficiently final for purposes of preclusion. *Jordana*, 232 B.R. at 477. The fact that a ruling has not been memorialized in writing does not defeat the doctrine of collateral estoppel. *Docteroff*, 133 F.3d at 216 (finding that "[b]y filing a Chapter 11 bankruptcy petition and invoking the automatic stay [the debtor] prevented the district court from holding a trial on damages and entering final judgment [, and] [p]ermitting [the debtor] to relitigate the issue in light of his original rejection of a full and fair opportunity to litigate would implicitly endorse his abuse of the judicial process."). There is no error in the bankruptcy court's conclusions on this issue.

Second, Armstrong argues that the appeal is not moot because the Temporary Allowance Order is void as there was no constitutional notice to all affected parties, specifically, the Trusts and its beneficiaries, and because the bankruptcy court judge subsequently recused herself from all further proceeding in his case. We will address each argument in turn.

Rule 3018(a) states that "[n]otwithstanding any objection to a claim or interest, the court after notice and hearing may temporarily allow the claim...." Fed. R. Bankr.P. 3018(a). The Bankruptcy Code further defines notice as "such notice as is appropriate...." 11 U.S.C. § 342(a). In this case, Armstrong received notice of the hearing, and he was present at the five-day hearing. However, Armstrong argues that because the Trusts were not noticed, their constitutional rights were violated, the mandates of the Bankruptcy Code were not observed, and the Temporary Allowance Order is void.

As a preliminary matter, we are not certain in what capacity Armstrong is alleging a violation of due process as to the Trusts. If it is in Armstrong's individual capacity as the appellant to this appeal, he cannot invoke another's rights. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (finding that ordinarily a party may not assert the rights of another to justify relief for himself or herself). If Armstrong is asserting the Trusts' rights in his capacity as the Trustee for the Trusts and in his capacity as the Trusts' beneficiary, then he is improperly doing so as the Trusts and its beneficiaries are not parties to this appeal.

■ However, assuming that this matter is properly before us, it is not clear why the Trusts or its beneficiaries should have been noticed. There is no evidence that either party had any interest in these proceedings.[14] The Temporary Allowance Order was by its terms confined to permitting Steppes to vote on the Trustee's Plan in Armstrong's Chapter 11 case. While the Trusts and its beneficiaries may be

Armstrong creditors, that does not entitled them to notice under § 3018(a).

More important, while the Trusts and its beneficiaries may not have received formal notice, they certainly received constructive notice. Pursuant to the Code, the Trusts and its beneficiaries were due only such notice as is appropriate. Armstrong was the trustee of the Trusts. Armstrong is also the main beneficiary of the Trusts. It is undeniable that he was present at the temporary allowance hearing.

■ Finally, Armstrong argues that the Temporary Allowance Order is void or voidable because the bankruptcy court judge recused herself from further proceedings in his case. He cites *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1028 (5th Cir.1998) for the proposition that if a judge should have recused herself, all subsequent orders are void. While Armstrong correctly cites the law, he misapplies it here.

The provisions governing recusal are found at 28 U.S.C. § 455, which delineates different circumstances under which a judge might recuse herself. Although Armstrong does not cite this statute, he appears to be contending that the bankruptcy judge should have disqualified herself because of partiality or bias. The provisions explaining partiality and bias provide in pertinent part:

(a) Any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

---

14. Armstrong alleges that because the Confirmation Order contained an injunction against the Trusts and its beneficiaries that the Trusts were interested parties with respect to the Temporary Allowance Order. There is no apparent logical relationship between the Temporary Allowance Order and an injunction in the Confirmation Order, and we decline to construe one.

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

28 U.S.C. § 455(a), (b)(1). " 'The goal of section 455(a) is to avoid even the appearance of partiality.' " *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (quoting Court of Appeals decision, 796 F.2d 796, 802 (5th Cir.1986)). The Tenth Circuit has stated that with respect to § 455(a) "the initial inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir.1995) (per curiam).

■■■■■ The test under 28 U.S.C. § 455(b) is whether "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987) (per curiam). However, the recusal statute is not to be construed so broadly as to require recusal "based on unsubstantiated suggestions of personal bias or prejudice." *Bryce*, 289 F.3d at 659–60. As noted previously, orders entered prior to a recusal may be voided if the injured party can show that the judge should have recused herself and failed to do so. *See Tramonte*, 136 F.3d at 1028. An appellate court's review of this inquiry is fact driven. *Bryce*, 289 F.3d at 660.

Armstrong has not offered any evidence that the bankruptcy court judge should have recused herself from these proceedings, nor has he presented us with any evidence that he even requested recusal at any point. In the record before us, we have little evidence of events at the hearing on the Motion; Armstrong has provided this court with only thirteen pages of the hearing transcript, which, given the fact that the trial lasted five days, must be, in totality, hundreds of pages. The only fact in this case that Armstrong provides to support his allegations of partiality and bias is that the bankruptcy judge later recused herself from his proceedings. That fact is not enough to indicate bias in any proceeding prior to the recusal.

Both Rushton and Steppes argue that Armstrong's failure to supply an evidentiary record, namely a transcript of the hearing, is fatal to the appeal.[15] In the record

---

15. On May 20, 2002, Armstrong filed a Motion for Waiver of 10th Cir. BAP L.R. 8009–1(b) and Fed. R. Bankr.P. 8009(b) and For Permission to File Overlength Initial Brief and Motion for Reconsideration of the Court's Ruling on Armstrong Providing Exhibits on Compact Disk ("Motion for Waiver"). Steppes objected to the Motion for Waiver on the grounds that the documents in Armstrong's appendix are largely irrelevant to the appeal and that Armstrong's request to provide his appendix to Steppes on the compact disc is really an attempt to shift the costs of the appeal to Steppes.

Although Armstrong's Motion for Waiver asks for waiver of all of the requirements of 10th Cir. BAP L.R. 8009–1(b) and Fed. R. Bankr.P. 8009(b), the body of the Motion for Waiver asks only for waiver of the requirements with respect to pagination and chronological order. Therefore, we grant Arm-

strong's Motion for Waiver on the following issues: waiver of the pagination requirements under 10th Cir. BAP L.R. 8009–1(b)(3); waiver of the chronological order requirements as delineated in 10th Cir. BAP L.R. 8009–1(b)(4); and permission to file an overlength brief. We deny Armstrong's Motion for Waiver on the issue of whether we will reconsider our previous ruling in an Order entered on April 3, 2002, that the appendix could be served on a compact disc to the appellees only with their consent.

In its brief, Steppes also makes the following objections concerning Armstrong's appendix: the appendix contains documents not in the record before the bankruptcy court; some of the items in the appendix were not admitted in the hearing and therefore are not part of the evidentiary record; some of the exhibits in the appendix are incomplete; some of the items in the appendix have been altered or modified or both; some of the items in the

before us, there is no evidence of the hearing other than the few previously mentioned pages of transcript from one day of the relevant hearing and the bankruptcy judge's findings of fact and conclusions of law.[16]

■ The burden of providing an appellate court with an adequate record for review is on the appellant. Fed. R.App. P. 10(b)(2). Such a record will include "all transcripts, or portions of transcripts, necessary for the court's review." 10th Cir. BAP L.R. 8009–1(b)(5). The pertinent inquiry is whether the record provided "discloses the factual and legal basis of the trial court order to allow appellate review." *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 202 (6th Cir. BAP 2001).

Armstrong argues that the bankruptcy court abused its discretion in the Temporary Allowance Order for the following reasons: (1) the bankruptcy court denied him a full and fair opportunity to be heard; (2) the bankruptcy court improperly denied the admission of evidence and documents or improperly allowed evidence and documents, or both; (3) the bankruptcy judge refused to consider Armstrong's offsets and counterclaims against Steppes;

and (4) the bankruptcy court was biased and partial against him.[17] All of these claims rely on events that occurred during the hearing. None of those claims can be supported by evidence in the actual Temporary Allowance Order, which, in sixty-three pages, carefully delineates the factual and legal bases for the bankruptcy court's decision. Armstrong's failure to provide this Court with the pertinent transcript thwarts any attempt by this Court to apply the abuse of discretion standard with respect to the hearing and the ensuing Temporary Allowance Order.

■ Armstrong argues that he should not be required to supply a complete transcript as he cannot afford to pay for it. Under 28 U.S.C. § 753(f) an appellant may apply for a court to pay for the transcripts in an appeal. However, there are two preliminary requirements: the person must have been permitted to proceed in forma pauperis[18] and the trial judge must certify that the appeal is not frivolous. 28 U.S.C. § 753(f). Armstrong has not met the requirements of either step. Consequently, the burden was on Armstrong, regardless of his ability to pay,

---

appendix are not evidence but legal authorities; and exhibit number 54 has been altered to include information that was not in the original document. We conclude that any errors in Armstrong's Appendix are insignificant given the outcome of this appeal.

16. Armstrong has filed a Motion for Extension of Time to File a Reply Brief and to File and Overlength Reply Brief ("Motion to Extend Time"). We grant his Motion to Extend Time on both issues.

17. In this appeal, Armstrong argues that the bankruptcy court also erred with respect to the following issues: (1) that a previous bankruptcy court found that in its pleadings Steppes had not pled with sufficient specificity under Federal Rule of Civil Procedure 9; (2) that Steppes's liens are wrongful liens; (3) that Steppes has made many of the arguments

it made in this case in the MPV case, and the MPV bankruptcy court ruled against Steppes. These arguments are based on rulings that were entered in the MPV case and are irrelevant to this appeal.

18. In another case, on a motion to proceed in forma pauperis, a panel of this Court found that because the Bankruptcy Appellate Panel is not an Article III court, it does not have the power to grant leave to proceed in forma pauperis. A panel of this Court reasoned that because leave to prosecute an action in forma pauperis is governed by 28 U.S.C. § 1915(a), which provides that such leave may be granted by a "court of the United States" and the Tenth Circuit has held that the definition "court of the United States" provided in 28 U.S.C. § 451 refers only to Article III courts, this Court has no authority to grant such leave.

to proved a record sufficient for our review.[19] " '[I]t is counsel's responsibility to see that the record excerpts are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfil that responsibility.' " *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enters., Inc.),* 997 F.2d 1321, 1323 (10th Cir.1993) (quoting *Deines v. Vermeer Mfg. Co.,* 969 F.2d 977, 979 (10th Cir.1992) (further citation omitted)).

 As a general rule, the Tenth Circuit has held that the failure to provide a trial transcript on appeal warrants affirming the trial court when the issue on appeal requires the appellate court to review the record in the trial court. *McGinnis v. Gustafson,* 978 F.2d 1199, 1201 (10th Cir. 1992); *see also In re Rambo,* 209 B.R. 527, 530 (10th Cir. BAP), *aff'd without published opinion,* 132 F.3d 43, 1997 WL 786364 (10th Cir.1997). The rule is appropriate because when an appellant has failed to provide a reviewing court with an adequate record, the appellant has failed to provide evidentiary support for his or her appellate argument. *McGinnis,* 978 F.2d at 1201 (finding that the appellant's failure to include a transcript of the district court's oral ruling "raises an effective barrier to informed, substantive appellate review"). However, an appellate court is not limited to that remedy alone because under Federal Rule of Bankruptcy Procedure 8001, a district court or a bankruptcy appellate panel has the discretion to take that action it "deems appropriate, which may include dismissal of the appeal." Fed. R. Bankr.P. 8001. We conclude that in the absence of a complete transcript and given our determination that this appeal is moot, we must affirm the Temporary Allowance Order.

## IV. *Conclusion*

For the reasons stated above, the Temporary Allowance Order is AFFIRMED.

---

**19.** In the designation of record, Armstrong indicated that he intended to file a transcript of the hearing. Subsequently, Armstrong filed a motion in this appeal requesting an extension of time to obtain and to file a transcript. On April 3, 2002, a panel of this Court granted that motion. Under these circumstances, we are puzzled by Armstrong's failure to produce an appropriate transcript for this appeal.