# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2863

EXTRA EQUIPAMENTOS E EXPORTAÇÃO LTDA., *et al.*,

*Plaintiffs-Appellants,*

*v.*

CASE CORPORATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8591—**Blanche M. Manning**, *Judge.*

_____

ARGUED JANUARY 9, 2004—DECIDED MARCH 15, 2004

_____

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Extra, a Brazilian company, sued Case, a major U.S. manufacturer of farm and construction equipment, in the federal district court in Chicago, charging fraud. (The co-plaintiff, Extra's boss, can be ignored.) Jurisdiction was based on 28 U.S.C. § 1332(a)(2), because the suit was between a citizen of a state (Case) and citizens of a foreign country (Extra and its boss). The district judge dismissed the suit under Fed. R. Civ. P. 19(b) on the

ground that Case Brasil & Cia, Case's wholly owned Brazilian subsidiary, was an indispensable party to the suit. Extra appeals.

Case Brasil had hired Extra to distribute Case products in Brazil. In 1999, Extra sued Case Brasil in a Brazilian court, claiming that corrupt employees of the subsidiary had caused the subsidiary to overcharge Extra. Later that year, a "settlement agreement" was negotiated and signed in Illinois by representatives of Extra and Case. No official of Case Brasil was present or signed the agreement, although the Case executive who signed it purported to be acting on behalf of both parent and subsidiary. The agreement ended the Brazilian litigation and provided that Case Brasil would continue to use Extra as a distributor and would seek no more than $2 million in past-due payments that it claimed Extra owed it under the distributorship contract. In exchange, Extra, besides dropping its suit against Case Brasil, promised to give Case information about the corrupt conduct of Case Brasil's employees that would enable Case to have them removed (thus avoiding possible trouble with the Brazilian government) without the parent or subsidiary incurring liability.

Extra filed the present suit in 2001, complaining that Case had defrauded Extra by inducing it to enter into the settlement agreement when Case knew that Case Brasil would not be bound by the agreement and would not perform its obligations under it. Case's objective in committing the fraud, Extra charged, was to get Extra's Brazilian suit against Case's subsidiary dropped and obtain the information about the corruption at the subsidiary without incurring any of the costs of the agreement arising from the fact that the agreement required Case Brasil to continue Extra as a distributor and to limit its claims for past moneys due from Extra to $2 million. But (according to Extra) Case

Brasil, claiming not to be bound by the agreement because it had not authorized its parent to make it—indeed, contending that it had had no wind of the negotiations or of the signing of the agreement—terminated Extra's distributorship and refuses to recognize any limit on its money claims, though Case was happy to receive the information about the corrupt employees that Extra furnished it pursuant to Extra's obligations under the agreement. Case had thus "manipulated the corporate distinction between itself and Case Brasil" by falsely representing that the Case official who signed the agreement was authorized to sign on behalf of Case Brasil.

Case moved to dismiss the suit on the ground that since Case Brasil *was* a party to the settlement agreement—the Case executive who signed it having signed it on the subsidiary's behalf as well as the parent's—the subsidiary was an indispensable party to the suit. After some discovery, the district judge agreed and dismissed the suit. This was a preliminary ruling, on jurisdiction, and not a ruling that Extra has no fraud case against Case. And anyway the essence of Extra's case is not that Case Brasil was not bound by the settlement agreement, but that Case schemed to make sure that Extra would not benefit from the agreement.

Case had moved in the alternative for dismissal under the doctrine of forum non conveniens, arguing that Brazil was a more convenient locale for the litigation of the fraud claim (there is no suggestion that Extra could not sue Case there). *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). But the district judge did not rule on the alternative ground.

Case denies that it committed fraud. It contends that the executive who signed the settlement agreement was indeed authorized to do so on behalf of both parent and subsidiary and therefore Case Brasil became bound by the settlement agreement, and that it has never repudiated or, for that

matter, violated it, though it has terminated Extra's distributorship (but without, Case contends, violating the agreement). Case points out that Extra has sued Case Brasil in Brazil for damages arising from the termination and that the suit is pending.

Two steps are involved in deciding whether someone is indispensable to a suit, so that the suit must be dismissed if, as in this case, he can't be made a party. The diversity jurisdiction does not extend to a suit in which there is a U.S. citizen on only one side of the suit and foreign parties on both sides, *Karazanos v. Madison Two Associates*, 147 F.3d 624, 627 (7th Cir. 1998); *Israel Aircraft Industries Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198, 202 (7th Cir. 1994); *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 428 (7th Cir. 1993); *Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 580-81 (2d Cir. 2002), as there would be if Case Brasil became a defendant. And the federal courts' supplemental jurisdiction cannot be used to leap this jurisdictional hurdle. See 28 U.S.C. § 1367(b).

The first step in determining indispensability is to decide whether if the person *could* be joined, he *would have* to be joined. One of the circumstances in which he would have to be joined (if he could be) would be if he "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [his] absence may as a practical matter impair or impede [his] ability to protect that interest." Fed. R. Civ. P. 19(a)(2)(i). The second step is to determine, if he cannot be joined, "whether in equity and good conscience the action should proceed among the parties before [the court], or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) lists several factors as bearing on this determination, of which the two most important in this case are "to what extent a judgment rendered in the person's absence might be prejudicial to" him and "whether the

plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Because of the looseness of the terms "equity and good conscience" and because their applicability is to be determined in each case by weighing several factors with no weights indicated, we agree with those courts (the majority) that hold that appellate review of a determination of indispensability is limited to deciding whether the district judge has committed an abuse of discretion. E.g., *National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 250 n. 7 (4th Cir. 2000); *Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999); *Washington v. Daley*, 173 F.3d 1158, 1165 (9th Cir. 1999); *Jota v. Texaco Inc.*, 157 F.3d 153, 161 (2d Cir. 1998). The more particularistic, and the less rule-bound and therefore more discretionary, the required judgment made by the trial court, the more limited the competence of the appellate court. A judgment that is not governed by a rule cannot be determined to be correct or incorrect by comparing it to the language or purpose of a rule, because there is none; there is just a medley of imponderables. All the appellate court can do as a practical matter in such a situation is to decide whether the trial court exercised judgment in a reasonable manner.

The second factor that we quoted—whether the plaintiff has an alternative if the suit is dismissed—supports the district court's ruling. Dismissal would not be a disaster for Extra. It can bring its fraud claim against Case in a Brazilian court or, if it prefers, in a state court in Wisconsin, where Case is headquartered, or Illinois, where the settlement agreement was negotiated and signed. Extra is a Brazilian company and therefore should be especially comfortable litigating in Brazil's court system, and Case is suable there—remember that it moved to have the case transferred to Brazil, and we take this to be binding consent

to be sued there. Brazil seems in fact a natural venue for the litigation, given the pendency there of the related litigation between Extra and Case's Brazilian subsidiary. We do not say that Brazil is in fact a more convenient forum for the fraud litigation; that is the issue raised by Case's forum non conveniens motion, which the district judge did not address. Such a motion, like a motion to dismiss for failure to join an indispensable party, is addressed to the district judge's discretion, *Piper Aircraft Co. v. Reyno*, *supra*, 454 U.S. at 257; *In re Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir. 2003), and it is not for us to exercise that discretion in the judge's place. Our point is only that dismissal of this suit will not force Extra to abandon its fraud claim; it has an alternative forum, indeed alternative forums, in which to litigate it.

So this is a factor favoring indispensability. But the first factor bearing on the issue—whether a judgment in this suit would so harm Case Brasil that it would be inequitable to allow the suit to proceed to judgment without its being a party—is not as supportive of a finding of indispensability as the judge thought. She termed Case Brasil a "primary or active participant in the acts underlying the alleged fraudulent conduct" and said that its presence in the litigation would be "vital to this Court's determination of whether Case is liable." The alleged fraud, to repeat, was Case's making Extra think that the settlement agreement gave Extra the right to remain a distributor of Case Brasil and capped its liability to Case Brasil. This allegation makes Case Brasil, which has been sued for terminating Extra, an intended beneficiary of the fraud but possibly an unwitting one, so it is unclear whether it would be hurt by a judgment against Case, as it would be if it were determined to be a participant in the fraud. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985). And while evidence obtained from Case Brasil might well be vital to a determination of whether Case committed the alleged fraud—there

may have been no fraud if Case Brasil is, as Case claims, bound by the settlement agreement—this would just make Case Brasil an indispensable witness, and an indispensable witness isn't an indispensable party.

The judge added that "a judgment entered by this Court would prejudice Case Brasil because it would impair its ability to defend itself in subsequent actions which Extra could file regarding its actions and obligations under the [Settlement] Agreement." Either in the pending litigation in Brazil or in a new case there or in a U.S. state court, Extra might be able to use findings underlying a judgment in its favor in the suit in the Northern District of Illinois to further its claims against Case Brasil. Suppose Extra proves that the purpose of the agreement was to enable Case to obtain the information that it wanted about the corrupt practices of its subsidiary's employees without preventing Case Brasil from terminating Extra, by making Extra think that by agreeing to turn over the information it would preserve its distributorship, when all along Case Brasil was planning to repudiate the agreement on the ground that it had never become a party to it. Such a finding might help Extra prove in the Brazilian litigation against Case Brasil that the termination of the distributorship agreement was a breach for which Case Brasil must pay damages. Or suppose that while Case tried in the present litigation to show that there was no fraud because its subsidiary performed all the subsidiary's obligations under the settlement agreement, the court found the contrary. Such a finding too might be used against Case Brasil in Brazil.

Under Illinois law, as under American law in general, findings made after a full and fair hearing and essential to the judgment entered on the basis of that hearing can be used to preclude relitigation of the issues resolved by the findings in another lawsuit between the same parties, or

parties in privity with them. *Herzog v. Lexington Township*, 657 N.E.2d 926, 929-30 (Ill. 1995); *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (Illinois law); *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999) (ditto). Although Extra rather surprisingly does not contend that Case Brasil is merely an alter ego of Case—that is, does not try to "pierce the corporate veil" and thus treat the two corporations as one—it does contend that Case Brasil was a tool used by its parent to commit the fraud. It contends that the promise that Case Brasil would not terminate Extra or seek payment of more than $2 million was the bait dangled before Extra to persuade it both to drop its suit against Case Brasil and give Case the information about Case Brasil's corrupt employees that Case needed to clean up its subsidiary— and the tool might well be thought to be in privity with the hand, as in other agency settings. *Moy v. County of Cook*, 640 N.E.2d 926, 928 (Ill. 1994); *Horwitz, Schakner & Associates, Inc. v. Schakner*, 625 N.E.2d 670, 674 (Ill. App. 1993); *Ellens v. Chicago Area Office Federal Credit Union*, 576 N.E.2d 263, 266 (Ill. App. 1991).

That, however, is so under Illinois's law of collateral estoppel, and we are given no indication of what Brazil's law on the matter is; it may be quite different. See Antonio Gidi, "Class Actions in Brazil—A Model for Civil Law Countries," 51 *Am. J. Comp. L.* 311, 384-86 and n. 233 (2003). Nor whether, though under federal law Illinois's law of collateral estoppel would determine the preclusive effect of a federal judgment rendered in a diversity case governed by Illinois substantive law, see *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001); *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207-08 (10th Cir. 2001); *Marshall v. Inn on Madeline Island*, 631 N.W.2d 113, 120-21 (Minn. App. 2001); *In re Armstrong*, 294 B.R. 344, 357-58 (10th Cir. BAP 2003), Brazil has a similar rule. If it does not, or if, as Professor Gidi suggests, Brazil

does not have a doctrine of collateral estoppel, Case Brasil may have little to fear from the outcome of the present litigation.

There is another point that the district judge did not address, and that is the significance of the fact that Case Brasil is a wholly owned subsidiary of Case. Even so, because Extra does not argue that Case Brasil is an alter ego of Case, it will be treated by the law for most purposes as an independent entity. But it doesn't follow that its relation to Case is irrelevant to determining indispensability. If Case and Case Brasil were separately owned, Case Brasil could not rely on Case to protect its interests fully in the Northern District litigation if Case Brasil were not (as it cannot be) a party. But given the complete identity of interests by virtue of Case's being the sole owner of Case Brasil, we find it hard to see how Case Brasil can be harmed by not being made a party to the suit in Chicago. Suppose that a judgment against Case in the Northern District would be given preclusive effect, or at least (as may be likelier, Rudolf B. Schlesinger *et al.*, *Comparative Law* 481-84 (6th ed. 1998)) considerable weight, in the Brazilian litigation and result in a cost to Case Brasil of $10 million. Since Case owns all of Case Brasil, the judgment would cost Case the same amount, so it would have the identical incentive to defend Case Brasil's interests in Chicago as Case Brasil would have if it could be joined as a party. *North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 648 (7th Cir. 1998); *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1373 (Fed. Cir. 1999); *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998); *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 135 (1st Cir. 1989); but see *Freeman v. Northwest Acceptance Corp.*, *supra*, 754 F.2d at 555, 559. Indeed, we have great difficulty seeing how a 100 percent subsidiary could *ever* be an indispensable party; the cases that we have cited, while refusing to treat 100 percent ownership as an absolute bar

to a finding of indispensability, do not indicate any factors that would justify finding a 100 percent subsidiary to be indispensable. But maybe there is a wrinkle in the corporate structure of Case and Case Brasil that is eluding us which would require a different conclusion.

The weight a Brazilian court would give a U.S. judgment in Extra's favor and the significance of Case's sole ownership of Case Brasil are conspicuous loose ends in the district judge's analysis of indispensability. We repeat that her ruling is reviewable only for an abuse of discretion. But before the issue of abuse is even reached, the appellate court must be satisfied that the judge has exercised her discretion responsibly by considering all the salient factors that would enter into a responsible exercise. That was not done here and the judgment must therefore be vacated and the case remanded for further consideration of the issue, consistent with the guidance provided by this opinion.

VACATED AND REMANDED.

A true Copy:

       Teste:

                         _____

                         *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*