MARITIME UNDERWATER SURVEYS, INC., Plaintiff, Appellant,

v.

The UNIDENTIFIED, WRECKED AND ABANDONED SAILING VESSEL, Her Tackle, etc., Defendant, Appellee.

No. 83–1245.

United States Court of Appeals, First Circuit.

Argued Aug. 1, 1983.

Decided Sept. 9, 1983.

Dean E. Cycon, New York City, for plaintiff, appellant.

E. Michael Sloman, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendant, appellee Com. of Mass.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Maritime Underwater Surveys, Inc. (Maritime), a Delaware corporation, appeals from the dismissal of its *in rem* admiralty action.

In November, 1982, after years of archival investigation and an expensive and dangerous ocean search, Maritime confirmed the find of a wrecked and abandoned sailing vessel one quarter mile off the beach at Wellfleet, Massachusetts. The vessel lies in fourteen feet of water, under five feet of sand. Maritime has tentatively identified the wreck as the *Whidah,* a notorious pirate ship which foundered off the Cape Cod coast in April, 1717.

Within weeks of confirmation of the find Maritime initiated this action. In response to Maritime's first prayer for relief the district court issued a Warrant for Arrest in Rem and appointed Maritime as custodian for the vessel. A United States marshall executed the warrant by floating a buoy above the site. Maritime prayed for title and possession of the vessel, her tackle, armament and cargo, demanding:

2. That all ... government agencies be enjoined forthwith from interfering with the Plaintiff's title, possession and property.

3. That Plaintiff's title be confirmed against all claimants and all the world.

4. That all ... states ... claiming an interest in the unidentified, wrecked and abandoned sailing vessel be cited to appear before this Honorable Court and show cause why possession should not be

---

* Of the District of Puerto Rico, sitting by designation.

delivered to Plaintiff as having full title and that Plaintiff be put into possession and its title confirmed.

In the alternative, Maritime sought an award of salvage against the vessel.

The only response to the complaint and Warrant for Arrest in Rem came from the Commonwealth of Massachusetts. On December 10, 1982 the attorney general of the Commonwealth filed a restricted appearance for the purpose of asserting that the Eleventh Amendment to the United States Constitution barred federal adjudication of the Commonwealth's claim to the vessel.[1] Following the submission of memoranda and oral argument, the district court ordered the dismissal of the complaint.[2] Relying upon *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), the court concluded that absent state consent, once a state asserts a colorable claim of ownership, a federal court loses jurisdiction to determine title. The Court held that Massachusetts' claim of title to the vessel is colorable.

One clear rule emerges from the factual and technical complexities of *Treasure Salvors:* the district court "did not have power ... to adjudicate the State's interest in the property without the State's consent." 458 U.S. 670, 682, 102 S.Ct. 3304, 3313, 73 L.Ed.2d 1057 (Stevens, J., plurality opinion) (Justice Stevens was joined by the Chief Justice and by Justices Marshall and Blackmun). "[A]n action to determine the title of the State of Florida to the artifacts ... is at the heart of the Eleventh Amendment immunity." *Id.* at 706, 102 S.Ct. at 3325 (White, J., concurring in the judgment) (Justice White was joined by Justices Powell, Rehnquist, and O'Connor).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by the Citizens of another State...." U.S. Const. amend. XI. With narrow exceptions, the Amendment denies federal adjudication between such litigants "unless the State has waived its sovereign immunity." *Treasure Salvors,* at 684 and n. 19, 102 S.Ct. at 3314 and n. 19. While the Court has never defined the precise contours of the Eleventh Amendment bar to admiralty jurisdiction, we believe that it precludes the present case.

In *Treasure Salvors* the State of Florida claimed title to the remains of the Spanish galley *Nuestra Senora de Antocha* which rested nine miles off its coast, well beyond the state's territorial jurisdiction. Florida officials, however, obtained possession of certain artifacts from the *Atocha* before the Supreme Court finally determined that the state lacked title to the surrounding seabed. *United States v. Florida,* 425 U.S. 791, 96 S.Ct. 1840, 48 L.Ed.2d 388 (1976). Relying upon that ruling, the plaintiff salvors sought return of the artifacts from the named state officials. Florida resisted the return of the items, asserting that the Eleventh Amendment barred an *in rem* admiralty action to gain possession of property owned by a state. *Treasure Salvors,* 458 U.S. at 682, 102 S.Ct. at 3313. While deferential to the state's Eleventh Amendment claim, the plurality refused to treat the case as a direct action against the state or any of its agents. It reasoned that in the admiralty action the state was neither named as a party nor required to appear. The process issued to compel return of the

---

1. The Commonwealth bases its claim in part on the federal Submerged Lands Act of 1953, 43 U.S.C. §§ 1301 *et seq.,* and on a Massachusetts statute declaring that it holds title to "underwater archaeological resources" which, inter alia, have remained unclaimed for one hundred years or more and are located within the state's inland or coastal waters. Mass.G.L. ch. 6 § 180.

2. In dismissing this case the district court took note of a state court action concerning this vessel. On December 11, 1983, simultaneous with its answer in this case, the Commonwealth initiated a civil action in the Barnstable Superior Court (No. 42725) against Maritime seeking a judgment declaring that title to the vessel was vested in the Commonwealth and that the plaintiff was required to comply with the state regulatory scheme governing the recovery of underwater archaeological resources.

items was, moreover, directed only at named state officials. *Id.* at 686–694, 102 S.Ct. at 3316–19. In the eyes of the plurality, the action was only against state officials, hence controlled by *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and its progeny. It concluded that the federal court retained jurisdiction to secure release of the artifacts, since the officials named as defendants had "no colorable basis on which to retain possession of the artifacts." *Treasure Salvors,* 458 U.S. at 682, 102 S.Ct. at 3313.

This case does not present the factual and procedural difficulties of *Treasure Salvors.* Here, the property in contention is located on submerged lands within the territorial boundaries of the Commonwealth of Massachusetts. 43 U.S.C. § 1301, *et seq.* No state official is a named party. Artifacts have not been removed from the wreck site. We believe that the case fits neatly within the injunction of the Eleventh Amendment. It is a suit by a corporate citizen of Delaware in all but form against the Commonwealth of Massachusetts. While the Commonwealth is not a named defendant, it is beyond cavil that Maritime recognized the state as its principal opponent. Maritime's prayer for relief seeks to enjoin *all* government agencies from interfering with its title. Unlike the *Treasure Salvors* plaintiff, moreover, Maritime demanded the compelled presence of "all ... *states* ... claiming an interest" in the vessel (emphasis supplied). It is self-evident that this demand was directed towards the Commonwealth. The ship lies within a quarter mile of the Massachusetts shoreline. The Commonwealth has asserted title to this and all other "underwater archeological resources" within its inland and coastal waters continuously since 1973. Mass.G.L. ch. 6 § 180. The Commonwealth is the only party to respond to Maritime's complaint and to the Warrant for Arrest in Rem. The courts are not blind to the real posture of the parties.

*Cf. In re New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057, 256 U.S. 503, 41 S.Ct. 592, 65 L.Ed. 1063 (1921).

Maritime urges upon us the analysis of *Cobb Coin Company, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, etc.,* 525 F.Supp. 186 (S.D.Fla.1981), 549 F.Supp. 540 (S.D.Fla.1982). Those cases, however, rest upon Florida's general appearance before the federal court and its request for declaratory and injunctive relief. The district court concluded that the state had waived its Eleventh Amendment immunity from federal jurisdiction. Here, the Commonwealth entered only a restricted appearance to question the court's jurisdiction, and plainly did not waive its immunity.

Because this is not a claim against a named state official, and because of the Eleventh Amendment's flat prohibition of suits against states regardless of their merit, we need not reach the colorability of the Commonwealth's claim (although we have no doubt the Commonwealth's claim is at least colorable, *see* note 1). Nor need we determine as a general matter "the extent to which a federal district court exercising admiralty *in rem* jurisdiction over property before the court may adjudicate the rights of claimants to that property as against sovereigns that did not appear and voluntarily assert any claim that they had to the res." *Treasure Salvors,* 458 U.S. at 697, 102 S.Ct. at 3321 (Stevens, plurality opinion). We merely hold that when a state asserts title to antiquities lodged within the seabed under its authority, the Eleventh Amendment bars federal adjudication of the state's interest, absent its consent.

Because no adequate remedy can be forged for plaintiff without the Commonwealth's participation in this action, we affirm the court's dismissal of the entire case. Fed.R.Civ.P. 19(b).[3]

*So ordered.*

---

**3.** The futility of continuing this case in federal court was presaged by the circuit court on remand in *Treasure Salvors:* plaintiff's "lament that, unless this case resolves the ownership issue, the result of seven years of litigation will

be inconclusive is, [at bottom], a complaint against the eleventh amendment; the State cannot be forced to litigate a claim to ownership of property in federal court." *Florida De-*

*partment of State v. Treasure Salvors, Inc.,* 689    F.2d 1254, 1256 (5th Cir.1982).