Richard FITZGERALD, et al.,
Plaintiffs, Appellees,

v.

The UNIDENTIFIED WRECKED AND ABANDONED VESSEL, etc.,
Defendant, Appellee.

Harry E. Hauck and Carlos Rivera–Davila, Intervening Plaintiffs, Appellants.

Richard FITZGERALD, et al.,
Plaintiffs, Appellants,

v.

The UNIDENTIFIED WRECKED AND ABANDONED VESSEL, etc.,
Defendant, Appellee.

Harry E. Hauck and Carlos Rivera–Davila, Intervening Plaintiffs, Appellees.

Nos. 88–1742, 88–1827.

United States Court of Appeals,
First Circuit.

Heard Jan. 12, 1989.

Decided Feb. 1, 1989.

---

Carlos J. Quilichini with whom Domingo Acevedo Bayron and Francisco R. Moya, Hato Rey, P.R., were on brief, for Richard Fitzgerald, et al.

Jose E. Alfaro Delgado and Calvesbert & Brown, San Juan, P.R., on brief, for Harry E. Hauck and Carlos Rivera–Davila.

Jose R. Garcia Perez, Hato Rey, P.R., Federal Litigation Div., with whom Hon. Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief, for intervenors Commonwealth of Puerto Rico and Puerto Rico Institute of Culture.

Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and PETTINE,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The HMS DEFIANCE is believed to have foundered off the coast of Puerto Rico in 1652. In 1986–87, two groups of salvors, the Fitzgerald group and the Hauck group, allegedly discovered the wreck of what some believe to be the DEFIANCE several hundred yards off the beach near Rincon,

Puerto Rico. The salvors recovered valuable artifacts, including an astrolabe.

On December 28, 1987, the Fitzgerald group filed this admiralty action in rem in the United States District Court for the District of Puerto Rico. On February 10, 1988, the Hauck group filed an intervening complaint. Each group claimed exclusive title and possession to the wreck and its artifacts and sought a judicial determination in its favor against all claimants and all the world. The Commonwealth of Puerto Rico and the Commonwealth's Institute of Culture intervened specially and moved the district court to dismiss the in rem action, arguing that the action was barred by the Eleventh Amendment since it would necessarily require adjudication of the Commonwealth's rival claims to the wreck and its artifacts. The district court granted this motion. Both the Fitzgerald group and the Hauck group appeal from this decision.

The district court ruled that this case is indistinguishable from *Maritime Underwater Surveys, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel,* 717 F.2d 6 (1st Cir.1983).[1] We agree with the district court and affirm its dismissal of the in rem action brought by the original and intervening plaintiffs.

We think it apparent that the instant proceeding is necessarily directed against the Commonwealth of Puerto Rico. If the in rem action is to accomplish its purpose, which is to determine ownership of the wreck and artifacts, the federal district court must resolve the Commonwealth's claim of ownership, and would do so without the latter's consent. In support of this, we point out the following: 1) The wreck is located within the Commonwealth's territorial waters. 2) The Commonwealth has claimed, and has been litigating in its local courts, so far successfully, the ownership of the wreck and the salvaged items. Thus, well before plaintiffs commenced this

---

* Of the District of Rhode Island, sitting by designation.

1. We reject plaintiffs' argument that *Maritime* "appears to be in contravention to" *Florida Department of State v. Treasure Salvors, Inc.,* 458

U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). *Maritime* is in full accord with *Treasure Salvors,* as we undertook to explain in *Maritime.* 717 F.2d at 7–8.

action, the Commonwealth's Institute of Culture [2] brought an action against plaintiffs in Puerto Rico Superior Court, claiming ownership of the artifacts recovered from the wreck. At oral argument, the parties informed us that the superior court had entered a final judgment in favor of the Commonwealth (we do not know the specifics of this ruling) and that this ruling is now being appealed to the Supreme Court of Puerto Rico. 3) Plaintiffs' complaint in the instant in rem action requests that "governmental agencies be enjoined from interfering with the Plaintiff's title, exclusive possession and property" and also that "all governments, governmental agencies, states ... claiming an interest in the Defendant vessel be cited to appear [in the district court] to show cause why possession of the Defendant vessel should not be delivered to Plaintiffs as having full title." 4) The Commonwealth (along with the Institute of Culture) has been the only party to respond to the complaints filed by the original and intervening plaintiffs. 5) The proceeding is not directed at state officials in a purely individual role. *See Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982).

Because it is "self-evident that this [in rem action] was directed against the Commonwealth" and the Commonwealth has not consented to federal adjudication of this dispute, the action is barred by the Eleventh Amendment irrespective of the actual merit of the Commonwealth's claim to the salvaged wreck and its treasures. *Maritime Underwater Surveys, Inc.*, 717 F.2d at 8. Once it is determined that the in rem action is directed against the Commonwealth itself and seeks to have a federal court adjudicate the Commonwealth's interest in the disputed property, a federal court

"need not reach the colorability of the Commonwealth's claim," *id.*, as plaintiffs ask us to do here. A majority of the justices in *Treasure Salvors, Inc.*, 458 U.S. at 702–03, 102 S.Ct. at 3323–24 (White, J., concurring in part and dissenting in part) (footnotes and citations omitted), agreed on this point:

> The Court of Appeals [in *Treasure Salvors, Inc.*] thought that the jurisdictional issue raised by the State merged with a determination on the merits of the validity of the State's claim to the property. The appellate court believed that it had "jurisdiction to decide jurisdiction" and could therefore determine who owned the artifacts in order to ascertain whether the suit was, in fact, an action against the State. By holding that "[t]he court did not have power ... to adjudicate the State's interest in the property without the State's consent," *ante*, at 682 [102 S.Ct. at 3313], the [plurality in *Treasure Salvors, Inc.*] properly rejects this novel conception of the Eleventh Amendment. The appellate court's approach to the jurisdictional issue is not consistent with our prior cases; it incorrectly assumes that a federal court may adjudicate a State's right to ownership of specific property within the possession of state officials without the State's consent. The approach is unsatisfactory because ... it "is equivalent to asserting that suits against a state are permitted by the eleventh amendment if the result is that the state loses."

We accordingly must agree with the district court that this action is barred by the Eleventh Amendment, and that the case should be dismissed in its entirety under Fed.R.Civ.P. 19(b) because, as explained in the district court's opinion and order, "no adequate remedy can be forged for plaintiff[s] without the Commonwealth's partic-

---

**2.** The Institute of Culture is an "official, corporate and autonomous entity whose purpose is to preserve, promote, enrich and diffuse the cultural values of the Puerto Rican people...." P.R.Laws Ann. tit. 18, § 1195 (1986). We note that the Institute of Culture was represented in this action by the Secretary of Justice of Puerto Rico and that the Institute joined *with* the Commonwealth in intervening in this action in order to contest the district court's jurisdiction. It is

unclear whether the Institute is an arm or alter ego of the Commonwealth. *See Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir.1987) (listing factors to be considered in determining whether entity is an alter ego of the state). Even if it is not, however, plaintiffs' in rem action seeks to adjudicate not only the Institute's interest in the wreck, but also the Commonwealth's interest. *See* paragraph 3), *infra*.

ipation in this action." *Maritime Underwater Surveys, Inc.,* 717 F.2d at 8.

AFFIRMED.