The SINDIA EXPEDITION,
INC., Plaintiff,

v.

The WRECKED AND ABANDONED VESSEL, KNOWN AS "THE SINDIA," which ran aground off Ocean City, N.J., her tackle, armament, apparel, and cargo located within 3,000 yards of a point at coordinates 74° 35′ 12″ West Longitude and 39° 16′ 00″ North Latitude, et al., Defendant.

Civ. A. No. 86–2889(SSB).

United States District Court,
D. New Jersey.

May 5, 1989.

Peter E. Hess, Wilmington, Del., and David Paul Horan & Associates, P.A. by David Paul Horan, Key West, Fla., for plaintiff.

Clark, Ladner, Fortenbaugh & Young by Edward V. Cattell, Haddonfield, N.J., for Seaview Beach Condominium Assoc., Inc.

Office of the Atty. Gen. by John M. Van Dalen, Deputy Atty. Gen., Trenton, N.J., for State of N.J.

Saiber, Schlesinger, Satz & Goldstein by Robin B. Horn, Newark, N.J., for Noreaster Marine Salvage L.P.

Kirlin, Campbell & Keating by Cary R. Wiener, Caldwell, N.J., for McHale, Kissane & Pennypacker.

## OPINION

BROTMAN, District Judge.

### I. INTRODUCTION

For almost eighty-five years, the vessel THE SINDIA rested quietly in its watery grave, three thousand yards off the beach in Ocean City, New Jersey.[1] Litigation began to brew on July 25, 1986, however, when The Sindia Expedition, Inc., ("The Expedition") commenced this *in rem* proceeding in admiralty against THE SINDIA seeking title and/or a liberal salvage award. On the same day, the Clerk of this Court issued a warrant for the arrest of THE SINDIA and the libel and warrant were duly served and published shortly thereafter. Three days later, on July 28, 1986, The Expedition was appointed Substitute Custodian of the vessel.

The Expedition was not, however, the only party casting an eye to the sea. On September 11, 1986, the Seaview Beach Condominium Association, Inc., ("Seaview") entered an appearance claiming ownership. On November 3, 1986, the state of New Jersey filed a letter with this Court, asserting its ownership of THE SINDIA but stating that it would not waive its eleventh amendment immunity in this litigation. On November 1, 1988, this court affirmed a Magistrate's decision allowing Noreaster Marine Salvage L.P. ("Noreaster") and McHale, Kissane & Pennypacker ("McHale") to intervene. Noreaster lays claim as a competing salvor. McHale, like Seaview, claims that the wreck is on submerged land in which it has an interest.

Before the court today is McHale's motion to dismiss the libel. In broad terms, McHale contends that this court lacks jurisdiction, that service of process was defective, and that The Expedition has failed to join an indispensable party. Noreaster and The Expedition both oppose McHale's motion. The court will initially address McHale's last argument because it may be dispositive.

### II. DISCUSSION

■ McHale notes that The Expedition has failed to join the state of New Jersey and that the state is an indispensible party. Under the doctrine of *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), the court cannot determine a state's interest in property without the state's consent. *Id.* at 682, 102 S.Ct. at 3313. Some courts have interpreted *Treasure Salvors* to require a district court to dismiss an admiralty action from the federal courts for failure to join an indispensable party, *see* Fed.R. Civ.P. 19(b), when the state has a colorable claim of title to the *res*. *See, e.g., Marx v. Government of Guam*, 866 F.2d 294 (9th Cir.1989); *Fitzgerald v. Unidentified, Wrecked & Abandoned Vessel*, 866 F.2d 16, 18 (1st Cir.1989); *Maritime Underwater Surveys, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 717 F.2d 6, 8 (1st Cir.1983); *Subaqueous Exploration & Archaeology, Ltd. v. Unidentified, Wrecked & Abandoned Vessel*, 577 F.Supp. 597, 608 (D.Md.1983). Other courts, however, have held that a federal court can determine who has title among all claimants except the state. *See, e.g., Florida v. Treasure Salvors, Inc.*, 689 F.2d 1254, 1256 (5th Cir.), *on remand from Treasure Salvors*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Riebe v. Unidentified, Wrecked & Abandoned 18th Century Shipwreck*, 691 F.Supp. 923, 926 (E.D.N.C. 1987).

This court believes that the approach in *Marx* and *Maritime Underwater Surveys* is the better one because it comports with Federal Rule of Civil Procedure 19(b). That consideration is particularly relevant in this case where The Expedition has sought that "all other persons, firms, and corporations or *governmental agencies* be enjoined from interfering with [The Expedition's] title, possession and property." Complaint at 3 (emphasis added). Addressing whether the state of New Jersey is an indispensable party also avoids the "lament" raised in *Treasure Salvors* that, ab-

---

1. THE SINDIA ran aground on December 15, 1901, while en route from Shanghai to New York.

sent the state, this litigation would lead to inconclusive results despite the expenditure of considerable resources. *Treasure Salvors,* 689 F.2d at 1256.[2]

■ Accordingly, this court must consider whether New Jersey has a colorable claim of title to THE SINDIA.[3] Various courts have suggested that the Submerged Lands Act of 1953, 43 U.S.C. § 1311(a), confers on each state a colorable claim to shipwrecks in its waters. *See Marx,* 866 F.2d at 300–01; *Maritime Underwater Surveys,* 717 F.2d at 8; *Subaqueous Exploration,* 577 F.Supp. at 608. In each of these cases, the courts relied on both the Submerged Lands Act of 1953, 43 U.S.C. § 1311(a) (1982), and a state statute automatically vesting title in the shipwreck in the state after a period of time.[4]

The court has canvassed the New Jersey statutes and cannot find any analogous provision that automatically vests title in the State. Conceivably relevant to this litigation, however, are two statutes under which the state of New Jersey can conditionally secure title. *See* N.J.Stat. Ann. § 12:4–6 (West 1979) (county board of chosen freeholders may declare a vessel abandoned and forfeited to the state thirty days after the vessel has sank or become stranded in navigable waters); N.J.Stat.Ann. § 12:7C–18 (West 1979) (State Department of Environmental Protection may receive title if it follows the same statutory procedure as landowner). Unfortunately, no one

has claimed that title to THE SINDIA is governed by either provision.[5]

The absence of such a claim on the shipwreck by the state of New Jersey and the absence of a statute automatically vesting title in the state are not dispositive, however. It is § 1311(a) of the federal Submerged Lands Act, not the state statute, that grants title and ownership of the lands beneath navigable waters to the state. *See Bailey v. Driscoll,* 19 N.J. 363, 367–69, 117 A.2d 265, 267–68 (1955). To require New Jersey to adopt a statute akin to those in *Marx, Maritime Underwater Surveys,* and *Subaqueous Exploration* in order to protect its interest in shipwrecks like THE SINDIA is tantamount to holding that a state can abandon to a salvor the shipwrecks that *Marx, Maritime Underwater Surveys,* and *Subaqueous Exploration* all held were conveyed by Congress to the state in section 1311(a). It is well established in New Jersey that the state cannot forfeit its title on the basis of adverse possession, prescription or the presumption of a lost grant. *See O'Neill v. State Highway Dept.,* 50 N.J. 307, 320–21, 235 A.2d 1, 8 (1967).

It should also be noted that the state of New Jersey has exercised "the right and power to manage, administer, lease, develop and use the said lands and natural resources all in accordance with applicable state law...." 43 U.S.C. § 1311(a) (1982). For example, New Jersey has prohibited the commercial salvage of shipwrecks over

---

**2.** The Expedition and Noreaster, the competing salvors, contend that McHale lacks standing to advance the eleventh amendment argument. This claim is without merit—the issue at hand is not the merits of the state of New Jersey's claim to the wreck but rather whether the state has a colorable claim that renders it an indispensible party under Federal Rule of Civil Procedure 19(b).

**3.** Unfortunately, the October 6, 1986, submission from the state sheds no light on this score; it merely contains the bald, unsupported assertion that "New Jersey has long asserted ownership to the wreck and its cargo and artifacts." This Court cannot conclude that this assertion alone constitutes a "colorable claim" as required by the plurality in *Treasure Salvors. See Treasure Salvors,* 458 U.S. at 702, 102 S.Ct. at 3323–24.

**4.** One court has reached a contrary result on preemption grounds; it held that the Submerged Lands Act did not empower a state to "derogate both federal jurisdiction and the application of admiralty principles" to a state statute. *See Cobb Coin Co. v. Unidentified, Wrecked & Abandoned Sailing Vessel,* 525 F.Supp. 186, 215 (S.D.Fla.1981). Several courts have roundly criticized *Cobb Coin. See, e.g., Marx,* 866 F.2d at 300–01; *Jupiter Wreck, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel,* 691 F.Supp. 1377, 1389 (S.D.Fla.1988).

**5.** Because no one has addressed this fact in their submission, the court will not make any finding on this subject.

fifty years old. *See* N.J.Admin.Code § 7:7E–3.34(f). New Jersey has also declared that some shipwrecks are special marine habitats and/or fragile historic and cultural resources appropriate for recreational and commercial finfishing and shellfishing as well as scuba diving. *See* N.J. Admin.Code § 7:7E–3.13(a) & (b).

### III. CONCLUSION

Consequently, the court concludes that the state of New Jersey does indeed have a colorable claim on THE SINDIA [6] and the Court will enter an order granting McHale's motion to dismiss the libel, and vacating the arrest warrant of July 25, 1986.

---

**6.** The court recognizes that its decision today will be of little precedential value and may become a derelict of the law in light of the enactment of the Abandoned Shipwreck Act of 1987, Pub.L. No. 100–298, 102 Stat. 432. This

Act explicitly transfers title to any shipwreck "to the state in or on whose submerged lands the shipwreck is located." *Id.* at § 6(c). *See generally Marx,* 866 F.2d at 300 (discussing the significance of the Act on pending litigation).