SALTON, INCORPORATED,
Plaintiff–Appellee,

v.

PHILIPS DOMESTIC APPLIANCES
AND PERSONAL CARE B.V.,
Defendant–Appellant.

Electrical & Electronics Limited,
Intervenor–Appellee.

Philips Domestic Appliances
and Personal Care B.V.,
Plaintiff–Appellant,

v.

Salton, Incorporated, Defendant–
Appellee,

and

Electrical & Electronics Limited,
Intervenor–Appellee.

Salton, Incorporated, Plaintiff,

v.

Philips Domestic Appliances
and Personal Care B.V.,
Defendant–Appellee.

Electrical & Electronics Limited,
Intervenor–Appellant.

Nos. 04–1042, 04–1359, 04–2994.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 2004.

Submitted Aug. 5, 2004.

Decided Dec. 7, 2004.

Rehearing and Rehearing En Banc
Denied Jan. 12, 2005.

John M. Dimatteo, Richard Mancino (argued), Willkie, Farr & Gallagher, New York, NY, for Defendant–Appellant.

Kerry Connolly (argued), Tuan, Connolly & Cho, New York, NY, for Intervenor–Appellee and Intervenor–Appellant.

Stephen D. Libowsky, Howrey Simon Arnold & White, Chicago, IL, for Defen-

dant–Appellant, Plaintiff–Appellant and Defendant–Appellee.

James A. Klenk (argued), Sonnenschein, Nath & Rosenthal, Chicago, IL, for Defendant–Appellee and Plaintiff.

Lawrence W. Schad, Beeler, Schad & Diamond, Chicago, IL, for Intervenor–Appellant.

Before POSNER, RIPPLE, and ROVNER, Circuit Judges.

POSNER, Circuit Judge.

◾ Salton and Philips are competing makers of kitchen appliances. In August of last year Salton filed a diversity suit in the federal district court in Chicago against Philips, Salton being a citizen of Delaware and Illinois and Philips a citizen of the Netherlands. 28 U.S.C. § 1332(a)(2). Salton sought a declaration that it had not misappropriated any of Philips's trade secrets. After accelerated discovery, the district court dismissed the suit on the ground that another company, Electrical & Electronics (E & E), was an indispensable party, which is to say a necessary party that could not be joined in the suit and in whose absence the suit could not "in equity and good conscience" proceed. Fed.R.Civ.P. 19(b). Salton, though it had filed the suit, was content to see it dismissed. But Philips, which had counterclaimed and wants to litigate the counterclaim in the district court in Chicago, appeals from the dismissal. After the dismissal, moreover, Philips refiled a copyright claim that had been part of its counterclaim as an independent suit, which the district judge also dismissed, primarily on the ground that her previous ruling had determined that E & E was an indispensable party. Philips appeals this dismissal as well. Finally, after both suits were dismissed, E & E, which had intervened in the copyright suit (where its presence did not deprive the district court of jurisdiction, because jurisdiction over that suit was based on the presence of a federal claim rather than on diversity of citizenship), asked the district court to enjoin Philips from litigating its claims anywhere but in Hong Kong. The district court denied the injunction and E & E has appealed. The appeal is frivolous, as was the motion for an injunction. The district court had lost jurisdiction because a notice of appeal had been filed. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 731 (7th Cir.2001). Also, the premise of the motion—that Philips shouldn't be allowed to litigate its claims in the district court in Chicago—is, as we shall see, unsound.

Several years ago Philips started selling a new machine for the home brewing of single servings of coffee. The novelty was that the ground beans used to brew the coffee are inserted into the machine in the form of prepackaged "pods" each of which contains the right amount of coffee for one serving. The machine was manufactured for Philips under contract by E & E, a Hong Kong firm, using proprietary information provided by Philips, including computer software. E & E promised in the contract not to reveal any of this information to third parties. And even though E & E contributed to the development of the coffee machine as well as manufacturing it, the contract gives Philips a proprietary interest in "any and all ideas, improvements, developments, discoveries and inventions" arising from the development of the product even if E & E rather than Philips was the source of the innovation. The contract requires that any dispute arising out of it be litigated in the courts of Hong Kong.

Philips was not the only firm to hire E & E to make a "pods" coffee machine. Salton did so as well. And in May of last year Philips sued E & E in the High Court of Hong Kong, claiming that E & E had used Philips's proprietary information ("trade secrets" in U.S. legal parlance) in making Salton's machine. In a separate suit in that court against E & E, Philips charged copyright infringement. This claim is similar though not identical to the copyright claim against Salton that Philips wants to litigate in Chicago. It is not identical because the unauthorized copies of Philips's copyrighted software were made by E & E when it manufactured the coffee machines, not by Salton, so if Salton is liable for copyright infringement it is so by virtue not of copying but of making an unauthorized distribution of copyrighted materials. 17 U.S.C. § 106(3); *Ortiz–Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir.2002); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 843 (11th Cir.1990).

Salton was not a party to the litigation in Hong Kong between Philips and E & E, but it reacted to it, and to a letter from Philips threatening to sue Salton, by suing Philips in Chicago two months later for declaratory relief; that is the suit that has given rise to the first of the two appeals before us. E & E was permitted to intervene for the limited purpose of arguing that it was an indispensable party. *Zych v. Wrecked Vessel Believed to be the Lady Elgin*, 960 F.2d 665, 670 (7th Cir.1992); *Fitzgerald v. Unidentified Wrecked & Abandoned Vessel*, 866 F.2d 16 (1st Cir. 1989).

At first Salton took no position on the question of E & E's indispensability, but it has now swung around to the view that E & E is indeed an indispensable party. If so, then since E & E like Philips is a foreign corporation and there is no diversity jurisdiction over a case in which there are foreign parties on both sides of the suit and a U.S. citizen on only one side, *Extra Equipamentos E Exportação Ltda. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004); see 28 U.S.C. § 1332(a), adding E & E as a party would destroy federal jurisdiction, and so the suit was properly dismissed. Philips presented a federal question in its counterclaim by charging a violation of U.S. copyright law, but claims in a counterclaim cannot confer federal jurisdiction over a case. *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830–32, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583 n. 3 (6th Cir.2003).

Having supported E & E in getting the suit in Chicago dismissed, Salton intervened in the Hong Kong litigation between Philips and E & E. That litigation is pending.

There is much that is puzzling about this multiplex litigation. As Philips had not yet sued Salton when Salton brought its declaratory judgment action in Chicago, the natural explanation for that suit would be that Salton wanted to litigate in Chicago. This would be no surprise, because Salton's headquarters are in a Chicago suburb. But if Salton wanted to litigate in Chicago badly enough to jump the gun by seeking declaratory relief, thus in effect accelerating Philips's suit against it, why does it now defend the district judge's dismissal? By the same token, since there is no reason to think that Philips wanted to litigate against Salton in the latter's home base, why is Philips now fighting the dismissal? The briefs do not say, and questioning at oral argument elicited no credible answers. The parties may have learned things in the discovery process that altered their views of the likely out-

come or consequences of the Chicago litigation, but that is just conjecture.

Another curious and indeed distressing feature of the appeals is the lawyers' evident unfamiliarity with the Hong Kong court system and Hong Kong law, even though they are litigating in that system and, by virtue of the choice of law provision in Philips's contract with E & E, under that law, though Salton's presence in the suit may affect what law is applied since Salton is not a party to the contract. The lawyers appear not to know, for example, whether now that Salton is a party to the Hong Kong litigation Philips can refile its copyright claim against Salton there. Or what effect a judgment on the merits in the Chicago suit or suits would have on the Hong Kong litigation, despite the relevance of this question to whether E & E really is an indispensable party to the Chicago litigation.

Another puzzle is why Salton, once it decided that it preferred to litigate in Hong Kong than in Chicago, did not move to dismiss its Chicago suit. Of course ordinarily a plaintiff, having chosen the forum for his suit, does not turn around and seek a change of forum. But circumstances may alter, and a plaintiff who decides that the forum in which he has sued is inconvenient after all can ask the court to transfer the case to another federal district, or to another division of the district in which he sued. 28 U.S.C. § 1404(a); *Ferens v. John Deere Co.*, 494 U.S. 516, 518–19, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir.1992); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). The plaintiff cannot use the transfer statute to transfer the case outside of the federal system, but he can move to dismiss it under Fed.R.Civ.P. 41(a)(2) and if the mo-

tion is granted file a new suit in a foreign court.

■ That won't always work. For example, the statute of limitations might bar the new suit. It wouldn't work here for a different reason—Rule 41(a)(2) is explicit that it cannot be used to knock out counterclaims. But a motion to dismiss a suit because of the inconvenience of the forum (*forum non conveniens* ) isn't a creature of rule or statute. See, e.g., *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717–18 (7th Cir.2002); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir.2001); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3828 (2d ed. 1986 & 2004 Supp.). And despite the absence of any case law, and the contrary suggestion in Jacqueline Duval–Major, Note, "One Way Ticket Home: The Federal Doctrine of Forum Non Conveniens and the Foreign Plaintiff," 77 *Cornell L.Rev.* 650 (1992), we cannot find a bar to a plaintiff's filing such a motion, especially when, as in this case, the main object is to get rid of a counterclaim—as to which the plaintiff is, of course, the defendant. So Salton could have filed a motion to dismiss its suit on the ground of *forum non conveniens* in order to get rid of the entire case as a prelude to the suit's being refiled in Hong Kong. There are obvious advantages to consolidating this three-sided dispute involving Philips, Salton, and E & E in one court, and at this point the only court in which that can be done appears to be the High Court of Hong Kong.

■ But no motion to dismiss the suit on the ground of *forum non conveniens* was filed. The only ground for dismissal that is before us is E & E's being an indispensable party in the Chicago suit— which it is, however, only if it is a "necessary" party in the sense of "claim[ing] an interest relating to the subject of the action and is so situated that the disposition

of the action in [its] absence may as a practical matter impair or impede [its] ability to protect that interest," Fed. R.Civ.P. 19(a)(2)(i), and if, in addition, "in equity and good conscience the action should [not] proceed among the parties before [the court]"—that is, should not proceed in the necessary party's absence— but rather "should be dismissed." Fed. R.Civ.P. 19(b). The rule lists several factors as bearing on "equity and good conscience." The two most important to this case are "to what extent a judgment rendered in the person's absence might be prejudicial to" him and "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Appellate review of the district judge's determination of indispensability is deferential because of the fact-intensive and multifaceted character of the inquiry, *Extra Equipamentos E Exportação Ltda. v. Case Corp.*, *supra*, 361 F.3d at 361–62; *National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 250 n. 7 (4th Cir.2000), and also because of the fuzzy terms ("practical matter," "might be prejudicial," "equity and good conscience") and the confusing overlap between the different subsections of the rule.

▇▇ With Salton mysteriously having lost interest in litigating in Chicago, yet Philips mysteriously wanting to litigate there, we can treat Philips's counterclaim as the first of our two suits (as it would have been had Salton not sought declaratory relief, in effect precipitating Philips's suit for misappropriation and copyright infringement). The second suit is merely a stripped-down version of the first, eliminating all but the copyright claim, refiled as an independent action rather than as part of the counterclaim in the first suit. Philips's essential claim in both suits is that Salton stole its intellectual property. The fact that Salton did so, Philips contends, in cahoots with E & E, which acted in effect as the conduit between Philips's intellectual property and Salton's competing coffee machine, would not in itself make E & E an indispensable party to Philips's suits. Under the principle of joint and several liability, which governs not only the common law tort of misappropriation of trade secrets but also the federal statutory tort of copyright infringement, *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir.2000); *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C.Cir.1981); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][2][d] (2004), the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor. The defendant may have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors, but the victim is not required to sue more than one of his oppressors. A rule automatically deeming joint tortfeasors indispensable parties to suits against each of them would be inconsistent with this common law principle and is therefore rejected. *Temple v. Synthes Corp.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (U.S.1990) (per curiam); *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1176 (7th Cir.1991); see also *Pujol v. Shearson/American Express*, 877 F.2d 132, 136 (1st Cir.1989).

The principle and its application to indispensability are practical. To require the victim of a joint tort to sue all the joint tortfeasors would have the perverse effect of making it more difficult for plaintiffs to obtain relief the greater the number of their tormentors by increasing the plaintiffs' litigation expense and also, as in this case, by curtailing their choice of forum. This consideration argues for a presumption against deeming unjoined joint tortfeasors indispensable parties.

878

█ A complication here, unremarked by the parties, arises from the limited scope of legal protection of trade secrets. With the arguable exception of *E.I. du Pont deNemours & Co. v. Christopher,* 431 F.2d 1012 (5th Cir.1970), the common law protects a trade secret against disclosure only by a breach of contract or an independent tort, such as trespass. *Micro Data Base Systems, Inc. v. Dharma Systems, Inc.,* 148 F.3d 649, 657 (7th Cir.1998); *Defiance Button Machine Co. v. C & C Metal Products Corp.,* 759 F.2d 1053, 1063 (2d Cir.1985); see generally *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* 925 F.2d 174, 177–80 (7th Cir.1991). Had E & E merely published to the world Philips's trade secrets, and Salton used the published information in the design or manufacture of its coffee machine, Philips would have no claim against Salton for misappropriation unless Salton knew or should have known that E & E had acted unlawfully in revealing the trade secrets, for that would make Salton E & E's accomplice in committing a tort or a breach of contract. *Ferroline Corp. v. General Aniline & Film Corp.,* 207 F.2d 912, 922–23 (7th Cir.1953); *Restatement (Third) of Unfair Competition* § 40(b)(3) (1995); Uniform Trade Secrets Act § 1(2)(ii)(B) (1985). Philips argues that Salton not only knew that E & E had revealed Philips's trade secrets wrongfully but actually procured E & E's breach of the confidentiality provisions in its contract with Philips and thus caused the revelation of Philips's trade secrets by committing an independent tort, that of interference with contract.

Philips's suit against Salton is thus a genuine joint tortfeasor case and Philips was not required to join another alleged tortfeasor (E & E). Philips's claim of copyright infringement similarly charges a joint tort: E & E and Salton are accused of acting in cahoots, E & E by making unauthorized copies of Philips's copyrighted software and Salton by distributing the copies without Philips's authorization.

If more is needed to show that E & E isn't an indispensable party in either of Philips's suits in Chicago, we note that E & E, which as the only Hong Kong company in the picture is presumably the party most knowledgeable about the substantive, procedural, and remedial law of Hong Kong, has failed to show that Philips has an adequate remedy against Salton in Hong Kong. E & E has not tried to educate either the district court or this court in the relevant principles of Hong Kong law. (We say "Hong Kong law" rather than "Chinese law" because, despite the reabsorption of Hong Kong into China, the Hong Kong legal system retains, for the time being anyway, its traditional British character. Charlotte Ku, "The Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China, Adopted by the National People's Congress on April 4, 1990," 29 *Int'l Legal Materials* 1511 (1990).) For all we know, the legal principles governing rights and remedies against misappropriation of trade secrets that a Hong Kong court would apply are less generous to plaintiffs than the law applicable to a tort suit against Salton litigated in Chicago, although since Philips's copyright claim is for violation of U.S. copyright law we assume without actually knowing that a Hong Kong court would apply U.S. law to that claim, at least. Philips's contract with E & E not only specifies Hong Kong as the site of any litigation arising out of the contract but also specifies that Hong Kong law shall govern the substantive issues in the litigation; but Philips's suit against Salton is a tort suit. There is no contract between the parties and hence no choice of law provision.

█ The rules on choice of law in tort cases usually select the law of the

place where the victim of the tort was injured, e.g., *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844–46 (7th Cir.1999), and in a case such as this in which a company is complaining of a misappropriation of trade secrets that place would be— one might suppose—the site of the company's principal place of business. E.g., *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 302 (7th Cir.1990); see generally *Restatement (Second) Conflict of Laws* § 145, comment e (1971). But the parties do not say; and we are told nothing about the pertinent principles of Dutch law. There is a further wrinkle: the *Illinois* choice of law rule applicable to misappropriation cases (and it is Illinois's choice of law rules that apply to the misappropriation claim in this case because Illinois is the forum state) selects the place where the misappropriation took place or the defendant obtained the benefit of the misappropriation, the latter being the state or other jurisdiction in which the defendant has its principal place of business; in Salton's case that is Illinois. *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1389–90 (1978); *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1225 (7th Cir.1982) (Illinois law); *Smith v. Dravo Corp.*, 203 F.2d 369, 373 (7th Cir.1953) (ditto); see also *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1511–12 (10th Cir. 1990).

And if the dismissal of the Chicago case stands? We do not know whether Hong Kong's choice of law rule in misappropriation cases is the same as Illinois's, or is, as one might expect a British court to hold, the general *lex loci delicti* rule. Maybe the substantive principles that a Hong Kong court would select are much less favorable to misappropriation plaintiffs than is Illinois law, which as we have just seen would govern the issues were the case tried in the federal district court in Illinois. Not that a remedy necessarily is inadequate merely because it is less generous than the alternative available if the suit is dismissed. See *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1498–99 (D.C.Cir.1995). But we cannot begin to assess adequacy without being given a sense of the differences in the pertinent legal principles of the respective jurisdictions.

Even more important, as far as the issue of adequacy is concerned, is the more than possibility that Philips cannot obtain adequate relief merely by enjoining E & E, because Salton would be left free to contract with another firm to manufacture its coffee machine—indeed, it has already made such a contract. A damages remedy against E & E may also be inadequate, because of difficulty in determining how much business Philips has lost and will lose to Salton as a result of E & E's misappropriation of Philips's trade secrets.

Concerning the possible impact on E & E of a judgment in the Chicago cases, E & E concedes that there is no danger that such a judgment would be given collateral estoppel effect in the Hong Kong litigation. Such a judgment might be given the weaker effect of a precedent, but even that is uncertain. The difference between Hong Kong law and American law may be so great as to attenuate greatly any precedential effect of an American decision. We are not even told what weight Hong Kong courts give to foreign precedents in their adjudications.

A greater harm to E & E looms, should the Chicago suit continue in its absence, and provides the strongest argument for E & E's indispensability. Were that suit to end in an injunction against Salton's distributing its coffee machine (Philips is seeking injunctive relief in the Chicago litigation), then E & E, as the manufactur-

er of the machine, would lose sales unless it could find another distributor, and that would be difficult for it to do with the legal cloud hanging over its head that would arise from an adjudicated violation of Philips's rights. E & E might forge ahead with manufacturing the machine, since a judgment in the Chicago suit would not bind it; but distributors might be unwilling to take the legal risk of being nailed by Philips, or at least might demand from E & E a price cut or an indemnity clause, in either case raising E & E's cost of distribution.

■ But instead of focusing on the factors that should guide a ruling on indispensability—factors that boil down to telling the judge to balance the harm to the party opposing dismissal against the harm to an absent party from the continuation of the litigation in its absence—the district judge emphasized the entwined character of the issues in the two courts, Chicago and Hong Kong. She pointed out that to prove misappropriation by Salton, Philips will have to show that E & E broke its contract with Philips by revealing Philips's trade secrets to Salton without authorization. But that is true in any case of tortious interference with contract. Just as in the closely related case of joint tortfeasors, there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract. *Arkansas v. Texas,* 346 U.S. 368, 369–370, 74 S.Ct. 109, 98 L.Ed. 80 (1953); *Hammond v. Clayton,* 83 F.3d 191, 195–196 (7th Cir. 1996); *Schulman v. J.P. Morgan Investment Management,* 35 F.3d 799, 806 (3d Cir.1994). The distinction we drew in *Extra Equipamentos E Exportação Ltda. v. Case Corp., supra,* 361 F.3d at 362, between an indispensable party and an indispensable witness is pertinent here. See also *Johnson v. Smithsonian Institution,* 189 F.3d 180, 188–89 (2d Cir.1999); *Pujol v. Shearson/American Express, supra,* 877 F.2d at 136. When a plaintiff is harmed by the acts of several persons, all may be essential sources of evidence in a suit against any. But if this possibility automatically required that all be joined, the rule that joint tortfeasors are not by virtue of their jointness indispensable parties, and the extension of that principle to the case in which the plaintiff is harmed by a breach of contract procured by a tortfeasor whom the plaintiff has sued without joining the contract breaker, would be overthrown.

To summarize, there is no basis for a finding that E & E is an indispensable party, and so the district judge erred in dismissing Philips's first suit. The second suit, the copyright suit, presents a closer question, though one that may wash out; that suit was just a reaction to the dismissal of the first and now that the first has been reinstated Philips will probably want to drop the second.

■ The dismissal of the second suit was based on the doctrine of collateral estoppel (issue preclusion). The judge thought that in dismissing the first suit she had necessarily concluded that E & E was an indispensable party to a litigation over the copyright claim as well as over Philips's other claims, since otherwise she wouldn't have dismissed the first suit in its entirety. Yet the second suit, unlike the first, was within federal jurisdiction irrespective of diversity, because it was based on a federal statute (the copyright law). Therefore E & E could have been joined as a party and in that event there would have been no basis for a Rule 19(b) dismissal. Or so at least it appears, because we don't know whether E & E would be within the personal jurisdiction of the district court in Chicago.

The district judge understood this difference between the two suits but thought it dissolved by the forum-selection clause in Philips's contract with E & E, which as we know requires that any legal disputes between the parties be litigated in Hong Kong. But a party will not be heard to argue that it cannot be joined in a suit if the obstacle to its being joined is within its power to remove. E & E can, and Philips (which wants to remain in Chicago) obviously will, waive the forum-selection clause. E & E may be put to a hard choice: litigate in Chicago when it would prefer to be in Hong Kong, or litigate in Hong Kong and not have the rights of a party in Chicago. But having to choose doesn't prevent its participating in the Chicago litigation. It merely influences its litigation strategy, forcing it to choose whether to fight in a forum it doesn't like or use the forum-selection clause to get out of that forum at the risk that its interests will not be adequately protected by a party to that litigation (Salton).

■ This analysis may seem inconsistent with the principle, explicit in Rule 19(a) and confirmed in cases applying that rule, *Soberay Machine & Equipment Co. v. MRF Ltd.*, 181 F.3d 759, 764 (6th Cir. 1999); *Ranger Transportation, Inc. v. Wal–Mart Stores*, 903 F.2d 1185, 1187 n. 2 (8th Cir.1990); *Tick v. Cohen*, 787 F.2d 1490, 1493–94 (11th Cir.1986), that a party with a valid defense of improper venue is entitled to be dismissed from the suit, even though such a defense is waivable. And a forum-selection clause is a substitute for the legal rules governing venue. But it's not as if E & E were being dragged into Chicago in the teeth of its forum-selection clause. Philips doesn't want to sue E & E in Chicago. The suit is against Salton. Philips is not violating the forum-selection clause by suing Salton, and therefore E & E cannot invoke the clause to get Philips to drop the suit.

■ In any event, once a judgment is reversed it ceases to have collateral estoppel effect. *Gosnell v. City of Troy*, 59 F.3d 654, 656–657 (7th Cir.1995); *California Dept. of Social Services v. Thompson*, 321 F.3d 835, 847 (9th Cir.2003); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir.1985). So our reversal of the dismissal of Philips's first suit requires reversal of the dismissal of the second as well. E & E is not an indispensable party in either of Philips's suits, and both therefore were improperly dismissed.

Although the sole claim in the second suit is part of the first suit, the reinstatement of the second suggests an alternative accommodation of E & E's interests. Since the second suit, unlike the counterclaim in the first, has a jurisdictional basis that is independent of diversity, E & E's presence in *that* suit would not require that the suit be dismissed. So E & E can in the district court's discretion be granted permission to intervene in that suit under Fed.R.Civ.P. 24(b), as in the strikingly similar case of *DSMC, Inc. v. Convera Corp.*, 273 F.Supp.2d 14 (D.D.C.2002). The supplemental jurisdiction of the federal district court (28 U.S.C. § 1367) can then be invoked to bring Philips's nonfederal claim against Salton into the suit. E & E will still pay a price—if it wants to litigate in Chicago it will be waiving the forum-selection clause in its contract with Philips. But that may well be a lower price than the price to Philips of being deprived of its chosen forum in which to litigate against Salton, with which it has no contract and therefore no forum-selection clause.

If on the other hand Salton wants to consolidate all its litigation against Philips in Hong Kong, it should file in the district court a motion to dismiss the case on the

ground of *forum non conveniens.* We said earlier that it could do this even though it is the plaintiff. Philips pointed out at argument that discovery has been completed in Chicago and hasn't been started in Hong Kong. So one thing the district judge will want to consider is whether the materials obtained in discovery could be transferred to Hong Kong and used in the litigation there. We express no view on how a motion to dismiss by Salton, if one is made based on the relative convenience of the alternative forums, should be decided.

The denial of E & E's motion for an injunction is affirmed, but otherwise the decision of the district court is

REVERSED AND REMANDED.